Argued and submitted November 10, 2015, affirmed April 13, petition for review allowed July 14, 2016 (360 Or 26)

# MULTNOMAH COUNTY SHERIFF'S OFFICE,
*Petitioner,*

*v.*

# Rod EDWARDS
## and Bureau of Labor and Industries,
*Respondents.*

### Oregon Bureau of Labor and Industries
0114; A157146

373 P3d 1099

Lindsay Kandra argued the cause for petitioner. On the briefs were Jacqueline A. Weber and Jenny M. Madkour, County Attorney for Multnomah County.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent Bureau of Labor and Industries. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

No appearance for respondent Rod Edwards.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.*

DEHOOG, J.

---

* DeHoog, J., *vice* Nakamoto, J. pro tempore.

**DEHOOG, J.**

In this case, we consider what ORS 408.230, commonly known as the veterans' preference law, requires of a public employer that uses an unscored application process in its hiring and promotion decisions. Petitioner, the Multnomah County Sheriff's Office, seeks judicial review of a final order of the Commissioner of the Bureau of Labor and Industries (BOLI), in which BOLI concluded that petitioner's internal promotion process failed to comply with that law's requirements because it did not grant the required preference to a disabled veteran. Specifically, BOLI determined that petitioner failed to "devise and apply" a method of giving disabled veterans "special consideration" in its unscored application process, which BOLI concluded that ORS 408.230(2)(c) required petitioner to do. On review, petitioner challenges that conclusion, as well as BOLI's decision to award emotional distress damages flowing from petitioner's violation of the veterans' preference law. We conclude that BOLI correctly interpreted and applied the veterans' preference law and did not err in its award of emotional distress damages. Accordingly, we affirm.

## I. VETERANS' PREFERENCE LAW

A. *Background and BOLI Proceedings*

We take the historical and procedural facts, which are unchallenged, from BOLI's findings of fact in its final order. *Meltebeke v. Bureau of Labor & Industries*, 322 Or 132, 134, 903 P2d 351 (1995). Petitioner posted an internal job announcement seeking applicants for promotion from a sergeant to a lieutenant position. Three sergeants applied, including Sergeant Edwards, a disabled veteran. All three were accepted as candidates. Under Oregon's veterans' preference law, public employers must grant a preference to veterans when hiring for certain types of civil service positions. ORS 408.230(1).[1] The parties do not dispute that petitioner

---

[1] ORS 408.230(1) provides:

"A public employer shall grant a preference to a veteran or disabled veteran who applies for a vacant civil service position or seeks promotion to a civil service position with a higher maximum salary rate and who:

"(a)(A) Successfully completes an initial application screening or an application examination for the position; or

is a public employer subject to the veterans' preference law or that the lieutenant position was covered by that statute.

Edwards did not receive the promotion. He filed a complaint against petitioner with BOLI's civil rights division, alleging that he was the victim of unlawful employment practices. After investigating the complaint, BOLI issued formal charges against petitioner, alleging that petitioner had failed to grant Edwards a veterans' preference. BOLI held a contested case hearing and, ultimately, issued a final order awarding Edwards $50,000 in emotional distress damages and imposing injunctive relief. Among other things, BOLI ordered petitioner to develop "a coherent, consistent, written and reasonable method by which to apply veterans' preference at each stage of any hiring or promotion decisions that must meet the criteria of ORS 408.230(2)(c)." In so deciding, BOLI reached a number of legal conclusions that petitioner now challenges on review.

BOLI began its analysis by interpreting the veterans' preference law and corresponding administrative rules to resolve how and when petitioner was required to apply the preference. To determine *how* to apply the preference, BOLI looked directly to the statute. The statute explains how employers must apply the preference during different types of hiring procedures, as follows:

"The employer shall grant the preference in the following manner:

"(a)  For an initial application screening used to develop a list of persons for interviews, the employer shall add five preference points to a veteran's score and 10 preference points to a disabled veteran's score.

"(b)  For an application examination, given after the initial application screening, that results in a score, the

---

"(B) Successfully completes a civil service test the employer administers to establish eligibility for the position; and

"(b) Meets the minimum qualifications and any special qualifications for the position."

Although the statute applies only to "public employer[s]," we use the term "employer" for ease of reference. Similarly, our discussion of an employer's obligations under the statute necessarily applies to both "hiring" and "promotion" processes. We use those terms interchangeably throughout this opinion.

employer shall add preference points to the total combined examination score without allocating the points to any single feature or part of the examination. The employer shall add five preference points to a veteran's score and 10 preference points to a disabled veteran's score.

"(c) For an application examination that consists of an interview, an evaluation of the veteran's performance, experience or training, a supervisor's rating or any other method of ranking an applicant that does not result in a score, the employer shall give a preference to the veteran or disabled veteran. An employer that uses an application examination of the type described in this paragraph shall devise and apply methods by which the employer gives special consideration in the employer's hiring decision to veterans and disabled veterans."

ORS 408.230(2). As we explain in more detail below, BOLI concluded, and the parties do not dispute, that petitioner used an unscored application examination subject to paragraph (c) during its promotion process.

BOLI concluded that, in order to give Edwards the preference contemplated by paragraph (c), petitioner was required to "devise *** methods" to give "special consideration" to veterans and apply those methods to its hiring process. In so concluding, BOLI looked to the text and legislative history of the statute and determined that the last sentence of paragraph (c) explains how to give the preference that the first sentence of paragraph (c) requires. BOLI construed the "devise and apply" requirement, and concluded that "devise" means "to form in the mind by new combinations of ideas, new applications of principles, or new applications of parts; formulate by thought." As BOLI reasoned, "In order to actually be devised, or 'formed in the mind,' the [preference] policy must be coherent and it must be stable." Thus, BOLI analyzed whether petitioner had had a coherent and stable preference method in place during its promotion process and whether petitioner had applied it to Edwards's application.

BOLI also considered *when* petitioner was required to apply that coherent and stable method, by examining BOLI's administrative rule interpreting ORS 408.230(2).

That rule, OAR 839-006-0450 (Feb 8, 2012),[2] provided, in relevant part:

> "(2)  At each stage of the application process a public employer will grant a preference to a veteran or disabled veteran who successfully completes an initial application screening or an application examination or a civil service test the public employer administers to establish eligibility for a vacant civil service position.
>
> "\* \* \* \* \*
>
> "(5)  If a public employer uses an application examination that consists of an evaluation method of ranking an applicant that does not result in a score, the public employer will devise and apply methods by which the public employer gives special consideration in the public employer's hiring decision to veterans and disabled veterans."

BOLI concluded that the rule required petitioner to apply the preference at "each stage of the application process." OAR 839-006-0450(2). Thus, BOLI analyzed whether petitioner had applied a coherent and stable preference method at what BOLI considered to be "each stage of the application process."

BOLI made factual findings about petitioner's promotion process to determine how and when petitioner had applied its purported veterans' preference. That promotion process had three initial "components," which BOLI considered to be, collectively, the first "stage" of the application process. First, applicants submitted resumes and letters of interest. Second, the county's human resources department conducted a "360-review" survey, in which former coworkers evaluated the applicants. Third, three command staff members—Undersheriff Moore, Chief Deputy Gates, and Captain Reiser—interviewed the candidates and reviewed their written application materials and the 360-review surveys. Based on those components, each interviewer then independently wrote a recommendation for the promotion. Two of the interviewers—Gates and Moore—also drew upon their personal experiences with the applicants. In each

---

[2] BOLI has since amended OAR 839-006-0450. The amendment does not affect our analysis, and all subsequent references in this opinion are to the version of the rule in effect at the time of petitioner's promotion process.

recommendation, the interviewers ranked the applicants; each interviewer ranked Edwards last. The written recommendations went to the sheriff to make the final promotion decision, which BOLI considered to be the final "stage" of the application process. In making his decision, the sheriff met with the human resources manager, Ott. He did not meet with Gates, and there was no evidence that he met with Moore or Reiser.

The personnel involved in the promotion process were all aware that petitioner was required to give Edwards a veterans' preference, but each had a very different idea about who would apply it and when. Gates said that he applied the preference by considering Edwards to be "the top candidate at each stage of the process" and that he had applied the preference before he made his recommendation to the sheriff. Moore, on the other hand, said that the preference factored in as he "jelled up [his] beliefs" and made his recommendation to the sheriff, but that he believed that the sheriff would "technically" apply the preference. Ott gave yet a third description as to who was to apply the preference and when they were to apply it, and contradicted Gates and Moore, as well as herself. Contrary to Gates's testimony, Ott testified that it was her responsibility, and not the responsibility of the interviewers, to apply the veterans' preference. Elsewhere in her testimony, she contradicted herself and said that she was not involved in the promotion process. She further testified that it was her responsibility to make sure that the sheriff applied the veterans' preference when he made the final decision. But she later contradicted herself again by suggesting that she had not given the sheriff the opportunity to apply the preference at all because, after the interviews, Edwards had not been a "competitive" candidate. She similarly contradicted herself by suggesting, at one point, that the preference applied at the beginning of the process, when the job "was [Edwards's] to lose," while, at other points, indicating that the preference applied throughout the process, with Edwards being the "number 1 candidate going into all three components," the "top candidate" at the interview step, and the candidate for whom the job "was his to lose at each stage."

The personnel involved in the promotion process also had different ideas about what standard to use when applying the veterans' preference. Gates believed that the preference meant that Edwards would "move up" if he were equal to all other candidates. He also said, using a slightly different description, "[W]e applied veterans' preference by always putting Sgt. Edwards at the top, as far as the consideration with respect to that and any area that he wasn't considered on the top, we need to provide a reason why." Moore said that the preference meant that Edwards "would be considered the number one prospect going into the process." If Edwards "had the requisite skill set," he would have the job, regardless of the qualifications of the other candidates because "he was entitled to it as a disabled veteran." Ott again gave various descriptions as to what the preference meant. She said that the preference meant that Edwards was "the number one candidate" and that the job was "his to lose" at various stages in the promotion process. She separately described it as meaning that the job belonged to Edwards if "he scored first, second, or a competitive third" and that the sheriff would be required to hire Edwards if Edwards were determined to be a "close third," "marginally close," or "ready to be promoted."

In evaluating petitioner's promotion process, BOLI explained that the standards provided by the hiring team were inconsistent with each other. For example, BOLI stated, "[b]eing the 'number [one] candidate going into the process,' * * * suggests that the preference can be overcome as soon as there is evidence that the preferred candidate is not, in fact, the best qualified." But, describing the job as Edwards's "to lose" "suggests that the preferred candidate has the job, and can only lose it if he shows himself to not be qualified." And, BOLI reasoned, "all of these formulations [were] different from Ott's" understanding that "Edwards would get the job if he was 'first, second, or a competitive [or close] third.'"

Based on that inconsistent testimony, BOLI concluded that petitioner had not shown that it had "actually devised and applied a method or methods by which to apply veterans' preference during, or as a result of, the stage of the process" in which the interviewers evaluated the

application components and made their recommendations. BOLI explained that conclusion:

> "[I]f the plan had actually been devised, * * * it would have been similarly understood by the persons who were implementing it. At least, the people involved in the hiring would understand their own roles in implementing it. Here, * * * Gates's understanding of his role was not the same as * * * Ott's understanding of his role. And in this case, the description of the plan, and when it was implemented, and when it was communicated, all varied from person to person and from time to time."

BOLI separately considered whether petitioner had devised a method to apply the preference when the sheriff made the final promotion decision. As noted, that analysis was based on BOLI's conclusion that OAR 839-006-0450 required petitioner to have preference methods in place at "each stage of the process." Again, BOLI concluded that petitioner had not formulated a coherent plan to apply the preference at that stage, in large part due to Ott's inconsistent testimony as to whether she or the sheriff was to apply the preference and her various inconsistent descriptions of the preference standard.

## B. Petitioner's Assignments of Error

On review, petitioner challenges BOLI's conclusion that petitioner violated the veterans' preference law, as well as the remedies that BOLI imposed as a result of that conclusion. We review BOLI's order to determine whether it "erroneously interpreted a provision of law." ORS 183.482(8)(a). In addition, we review to determine whether the order is "supported by substantial evidence in the record." ORS 183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id.* The order must also be supported by substantial reason—that is, it must "articulate a rational connection between the facts of the case and the legal conclusion." *Campbell v. Employment Dept.*, 256 Or App 682, 683, 303 P3d 957 (2013).

Petitioner's first three assignments of error are premised on its view that BOLI incorrectly interpreted the statute and administrative rules governing the veterans'

preference. Petitioner argues that BOLI erroneously concluded that petitioner was required to have a method in place to grant the preference at each stage of the promotion process. Petitioner's argument has two essential components. First, petitioner argues that ORS 408.230(2)(c) imposes two distinct obligations on employers: one, to give a veterans' preference when using an unscored application examination method, and two, separately to devise and apply methods to give special consideration to veterans when making hiring decisions. According to that view, petitioner would have complied with the law so long as it gave Edwards at least some "preference," regardless of whether it "devised" and "applied" any method of giving that preference. Second, petitioner argues that BOLI misinterpreted its rule and the underlying statute when it required petitioner to have a preference policy in place at "each stage" of the promotion process.

For the reasons that follow, we conclude that BOLI correctly interpreted the veterans' preference law when it determined how employers must apply the veterans' preference if they use unscored application examination methods. Specifically, when an employer uses such a process in hiring or promoting employees, the employer must also devise and apply a method of giving veterans a preference in the employer's hiring or promotion decision. Furthermore, we conclude that BOLI did not err in determining that petitioner was required to grant veterans a preference at "each stage" of that process.[3]

1. *The veterans' preference law requires employers to "devise and apply" methods of giving veterans "special consideration" when using unscored application processes.*

We begin by interpreting the veterans' preference law, ORS 408.230. Although BOLI argues that petitioner did not preserve the precise statutory arguments that it

---

[3] Petitioner does not argue that BOLI erred in identifying the specific "stages" of petitioner's process, or that, if BOLI could require the application of a preference at more than one stage, it could not require petitioner to apply a preference at the two stages it identified. Accordingly, we express no opinion on that issue.

makes on appeal, the correct interpretation of that statute is a question that is properly before us. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (when parties put proper construction of statute at issue and broader issue of statute's application is preserved, court's task is to correctly construe statute, regardless of parties' arguments). In interpreting a statute, our task is to give effect to the legislative intent behind the statute. ORS 174.020. We examine the text and context of the statute and, to the extent that it is helpful to our analysis, legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Here, the statutory text itself readily conveys the legislature's intent. As BOLI correctly concluded, ORS 408.230(2)(c) instructs employers how to apply the veterans' preference when they use unscored application examination methods.[4] That paragraph of the statute provides:

> "For an [unscored application examination] the employer *shall give a preference* to the veteran or disabled veteran. An employer that uses an application examination of the type described in this paragraph [*i.e.*, an unscored application examination] *shall devise and apply methods* by which the employer *gives special consideration* in the employer's hiring decision to veterans and disabled veterans."

(Emphases added.) The parallel structure of paragraphs (2)(a) through (2)(c) of the veterans' preference law demonstrates that the second sentence of paragraph (c) amplifies the first sentence. The first sentence conveys the legislative mandate that the employer give veteran applicants a preference; the second sentence tells the employer how to give that preference, namely, by first devising, then applying, a method of giving veterans special consideration. This structure—first requiring the application of a preference, then dictating how the preference is to be applied—recurs throughout ORS 408.230(2).

When read closely, ORS 408.230(2) exhibits the parallels between paragraph (c) and its neighboring paragraphs. That subsection, which governs various hiring processes, begins with a broad directive that applies to all

___

[4] As previously noted, the parties agree that ORS 408.230(2)(c) applied to petitioner's hiring process in this case.

hiring decisions: "The employer shall grant the preference in the following manner." ORS 408.230(2). In turn, paragraphs (a) through (c) each dictate, first, by reference to the specific application process in which a preference must be given,[5] that the employer must, in fact, give a preference in that process; and second, how the preference must be applied to each particular process.

Turning to the specific provisions of those three paragraphs, it is evident that the legislature intended to consistently use that approach. First, each paragraph identifies the applicable evaluation method, as follows. Paragraph (a) applies to "an initial application screening." ORS 408.230(2)(a). Paragraph (b) applies to "an application examination, given after the initial application screening, that results in a score." ORS 408.230(2)(b). And paragraph (c), the one at issue in this case, applies to "an application examination that consists of an interview * * * or any other method of ranking an applicant that does not result in a score." ORS 408.230(2)(c).

Second, each paragraph next specifies how to apply the prescribed preference. For an initial application screening, "the employer shall add * * * preference points to a veteran's score." ORS 408.230(2)(a). For a scored application examination after the initial application screening, "the employer shall add preference points to the total combined examination score." ORS 408.230(2)(b). And, for an unscored application examination, such as the one at issue here, the employer "shall devise and apply methods by which the employer gives special consideration in the employer's hiring decision to veterans and disabled veterans." ORS 408.230(2)(c). As BOLI observed, the statute's parallel structure demonstrates that the legislature intended "special consideration" in an unscored application examination to be an analog for "preference points" in a scored one. Thus, as BOLI concluded, devising and applying a method of giving veterans special consideration is the manner in

---

[5] The statute specifically identifies the following three application processes or evaluation methods: First, an initial application screening, ORS 408.230(2)(a); second, a scored application examination, ORS 408.230(2)(b); and third, an unscored application examination, such as the interview process that petitioner used in the hiring decision in this case, ORS 408.230(2)(c).

which employers are to give veterans a preference in unscored examinations.

Despite the statute's structural consistency, petitioner argues that we should view paragraph (c) as containing two independent requirements: First, a requirement that the employer give some, unspecified preference in an unscored application examination, and second, a requirement that the employer devise and apply a method of giving veterans special consideration in the hiring decision.

Even though petitioner argues that BOLI improperly construed paragraph (c) by failing to give different meaning to different terms of that provision, petitioner's proffered interpretation—which would give "preference" *no* meaning—is inconsistent with the statute as a whole and would reduce the relevant provisions to a tautology. That is, by petitioner's reading, those provisions would effectively read: "The employer shall grant the preference in the following manner: * * * For an [unscored application examination], the employer shall give a preference." ORS 408.230(2). Petitioner's circular reading of the statute would leave employers in the dark as to what ORS 408.230(2)(c) requires of them and, as happened here, would leave applicants and BOLI itself at a loss to see whether and how employers gave veterans the preference to which they were entitled. That would place paragraph (c) in sharp contrast with the parallel provisions of paragraphs (a) and (b), which expressly dictate what the preference is and how it is to be applied in other contexts. Given that strong textual guidance, we cannot conclude that the legislature intended that provision of the veterans' preference law to remain inscrutable, as it would under petitioner's interpretation.

In light of the foregoing, we agree that ORS 408.230(2)(c) imposes one obligation, rather than two, on employers who utilize an unscored application process. That obligation requires those employers to give veterans a preference by devising and then applying a method of giving those veterans special consideration in the employer's hiring decision. Thus, BOLI correctly concluded that, in order to give Edwards the veterans' preference required by ORS 408.230(2)(c), petitioner was required to devise a method

to give him and other veterans special consideration in its promotion decision and then to apply that method to his application.

2. *BOLI properly evaluated whether petitioner had devised and applied a method by which to give Edwards special consideration.*

Having determined that BOLI correctly concluded that ORS 408.230(2)(c) required petitioner to devise and apply a method to give Edwards a preference, we now turn to the question of whether BOLI properly applied that requirement. First, we agree with BOLI's succinct explanation of what it means to "devise" and apply a method of giving a preference: The employer must form a coherent and stable method and apply that method. The statute neither defines "devise" nor suggests that that term has special meaning in this context. Thus, we attribute to it its ordinary meaning. *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295-96, 337 P3d 768 (2014) (when legislature does not define statutory term, we look to its "plain, natural, and ordinary meaning" (internal quotation marks omitted)). As BOLI explained, "devise" ordinarily means "to form in the mind by new combinations of ideas, new applications of principles, or new arrangements of parts : formulate by thought." *Webster's Third New Int'l Dictionary* 619 (unabridged ed 2002); *see also Comcast Corp.*, 356 Or at 296 (noting that the courts frequently consult dictionary definitions of legislative terms, "on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended"). And, as BOLI articulated, "[i]n order to actually be devised, or 'formed in the mind,' the policy[6] must be coherent and it must be stable." Thus, BOLI correctly considered whether petitioner had formed a coherent and stable method of giving Edwards a veterans' preference.

---

[6] BOLI used both "policy" and "plan" as synonyms for "method," but did not further interpret the term "method." Petitioner appears to treat all of those terms as interchangeable. It is not necessary to interpret "method" to decide this appeal because, as we explain below, BOLI's correct interpretation of "devise" alone supported BOLI's conclusion that petitioner had not complied with the veterans' preference law.

Petitioner does not directly challenge that aspect of BOLI's interpretation of the veterans' preference law. Instead, petitioner argues that BOLI erred by incorrectly interpreting the statute and corresponding rule to require petitioner to apply the preference at multiple stages in the hiring process. As noted above, BOLI considered whether petitioner applied a coherent and stable preference method at "each stage" of the promotion process. By "each stage of the application process," BOLI meant, first, the "initial hiring stage"—when the interviewers rated Edwards and recommended him as a candidate—and, second, the stage at which the sheriff evaluated the candidates to make his final hiring decision. Based upon the inconsistent testimony that it had heard, BOLI concluded that no method to give veterans a preference was in place at either stage.

BOLI's conclusion that petitioner was required to grant Edwards a preference at each stage of the application process arose from BOLI's rule, OAR 839-006-0450, which implements ORS 408.230(2). Petitioner argues that BOLI misapplied that rule.[7] In relevant part, BOLI's veterans' preference rule provides:

"(2)   At each stage of the application process a public employer will grant a preference to a veteran or disabled veteran who successfully completes an initial application screening or an application examination or a civil service test the public employer administers to establish eligibility for a vacant civil service position.

"(3)   For an initial application screening used to develop a list of persons for interviews, the public employer will add five preference points to a veteran's score and ten preference points to a disabled veteran's score.

"(4)   For an application examination, given after the initial application screening, that results in a score, the public employer will add five preference points to a veteran's and ten preference points to a disabled veteran's total combined examination score without allocating the points to any single feature or part of the examination.

---

[7] Petitioner also argues that BOLI's specific application of OAR 839-006-0450 to its hiring process resulted in the promulgation of a new rule, which petitioner argues was procedurally improper and substantively wrong. We reject that argument without further discussion.

"(5) If a public employer uses an application examination that consists of an evaluation method of ranking an applicant that does not result in a score, the public employer will devise and apply methods by which the public employer gives special consideration in the public employer's hiring decision to veterans and disabled veterans."

BOLI specifically applied OAR 839-006-0450 subsections (2) and (5) to petitioner's application process. Subsection (5) closely tracks the provisions of ORS 408.230(2)(c) discussed above, and BOLI simply applied subsection (5) consistently with its interpretation of that statute. However, petitioner argues that BOLI erroneously subjected subsection (5) to the provisions of subsection (2), and, in so doing, improperly subjected petitioner's hiring process to subsection (2)'s requirement that a preference be granted at "each stage," a requirement that petitioner contends does not apply to unscored applications. But the premise of that argument is that BOLI erroneously inserted a requirement of subsection (5)—that employers give veterans "special consideration"—into subsection (2), which, petitioner contends, merely requires employers to grant veterans a "preference." We have already rejected petitioner's identical contention that the underlying statute, ORS 408.230(2)(c), makes that distinction. And because petitioner identifies no substantive difference between subsection (5) and ORS 408.230(2)(c), we reject petitioner's argument under subsection (5) of BOLI's rule for the same reasons that we rejected petitioner's argument under ORS 408.230(2)(c).

BOLI's application of OAR 839-006-0450 subsection (2) requires greater discussion. The term "stage" does not appear in ORS 408.230. Thus, BOLI relied on its interpretation of that statute under subsection (2) when it concluded that petitioner was required to apply a preference at more than one stage of its hiring process. Petitioner argues that BOLI erroneously interpreted both the statute and the rule by requiring petitioner to grant a veterans' preference at more than one stage of an unscored application process subject to OAR 839-006-0450 subsection (5). For the reasons that follow, we conclude that BOLI did not err in interpreting ORS 408.230 and OAR 839-006-0450(2) to require

that employers grant a preference at multiple stages of an unscored application process.

As we have explained, petitioner used an unscored application process in its hiring decision. If, instead, petitioner had used a scored application process, ORS 408.230 could have required petitioner to add preference points to veterans' applications at multiple stages in that process. *See* ORS 408.230(2)(a) (requiring employers to add points to veterans' scores on initial application screenings); ORS 408.230(2)(b) (requiring employers to add points to scored application examinations). Subsections (2) and (3) of BOLI's rule track ORS 408.230(2)(a) and (b) almost verbatim. Similarly, subsection (5) of that rule closely tracks ORS 408.230(2)(c), and, like the statute, that subsection describes how employers must grant the required preference if they use unscored application processes.

Given BOLI's close adherence to the underlying statute, it was reasonable for BOLI to apply subsections (2) and (5) in a manner that furthered the apparent intent of the statute. Just as the statute (and rule) require employers to add preference points at each stage of a scored application process, ORS 408.230(2)(a), (b); OAR 839-006-0450(3), (4), it is reasonable to conclude that the statute requires employers to grant veterans a preference at multiple stages when they use unscored application processes. And, like the initial mandate of ORS 408.230(2), which requires employers to grant preferences in each of several different application processes, subsection (2) of OAR 839-006-0450 similarly requires employers to grant preferences—whether as points or special consideration—at each stage of the particular hiring process that the employer uses.

As BOLI points out, nothing in the text or context of the underlying statute limits the application of the veterans' preference to a single stage when employers use unscored application processes. By requiring employers that use unscored application processes to grant a preference at "each stage," OAR 839-006-0450(2) ensures that those employers do not give veterans less consideration than their counterparts who use scored processes for both the initial application screening and the application examination.

Petitioner's alternative interpretation would sharply limit the circumstances in which employers would be required to grant veterans a preference. Given the remedial nature of the veterans' preference law, we decline to give it that narrow reading. *See Halperin v. Pitts*, 352 Or 482, 495, 287 P3d 1069 (2012) (remedial statutes should be construed liberally to effectuate legislative intent, if that construction is consistent with the text of the statute). Accordingly, BOLI did not err in concluding that petitioner was required to grant Edwards a preference at more than one stage.

3. *BOLI rationally articulated its conclusion that petitioner failed to grant Edwards a veterans' preference.*

In addition to arguing that BOLI misinterpreted the requirements of the veterans' preference law, petitioner argues that BOLI's conclusions that petitioner failed to devise and apply a preference method at either the interview stage or the final hiring stage lacked substantial reason. According to petitioner, its "methods" of granting a preference at both of those points in its hiring process were adequate, and BOLI failed to rationally articulate why they were not. *See Campbell*, 256 Or App at 683 (substantial reason exists only if the agency "articulate[s] a rational connection between the facts of the case and the legal conclusion"). We disagree. BOLI explained how its conclusions logically flowed from the fact that petitioner was unable to consistently and persuasively identify what its preference method was.

As we have noted, BOLI found it problematic that petitioner's key hiring personnel inconsistently described exactly what preference petitioner had applied to Edwards's application. However, BOLI duly considered the "preference most consistently advanced by [petitioner]—the simple policy that Sgt. Edwards was to be considered the 'top candidate' or 'the number one candidate' as he went into the process." Ott, Gates, and Moore all used similar (but not identical) descriptions. In considering whether anything in petitioner's hiring process might satisfy petitioner's statutory obligation to grant Edwards a preference, BOLI found that, if, in fact, Ott and the interview team had agreed on any particular approach, it most likely had been that

"number one candidate" formulation. BOLI accepted, for the sake of argument, that the "number one candidate" formulation meant that "Edwards would move forward in the hiring process if his qualifications were deemed equal to or superior of those of the other candidates."

BOLI concluded that, even if all of petitioner's key hiring personnel had shared that understanding of the preference they were to apply, it still would not have satisfied the veterans' preference law. BOLI observed that such an approach would not, in fact, grant veteran applicants any preference. As BOLI explained, that "formulation means that if another candidate was at all superior, Sgt. Edwards would not necessarily move forward. In other words, the merest puff of superiority can blow away the entire preference." Or, as BOLI also characterized it, Edwards had "a barely measurable head start." In concluding that petitioner's formulation failed to grant Edwards a meaningful preference, BOLI considered what the legislature had intended by requiring that employers grant veterans "special consideration." *See* ORS 408.230(2)(c). BOLI reasoned that "the context of the entire statute demonstrates that this special consideration is to be a substitute for the five point (for non-disabled veterans), or ten point (for disabled veterans), preference given to scored exams." Thus, BOLI reasoned, the preference in an unscored examination "must have some weight itself." In light of the evanescent quality of the preference that petitioner supposedly gave Edwards, BOLI concluded that petitioner had not given him "special consideration."

Contrary to petitioner's argument, then, substantial reason supports BOLI's conclusion that petitioner failed to grant a preference at the interview stage. BOLI identified a legal standard and measured petitioner's proffered "number one candidate" method against it. In other words, BOLI "anchored its decision to pertinent facts in the record." *Jenkins v. Board of Parole*, 356 Or 186, 208, 335 P3d 828 (2014) (explaining why substantial reason supported agency decision). BOLI considered petitioner's "number one candidate" method of giving veterans special consideration, and BOLI thoroughly explained why that purported method of applying a veterans' preference could not meet the requirements of ORS 408.230(2)(c). Thus,

BOLI articulated a rational connection between the facts that it found and its ultimate conclusion—that petitioner had an insufficient preference method in place at the time of Edwards's interview.

Likewise, substantial reason also supports BOLI's conclusion that petitioner had not granted Edwards a preference at the final hiring stage. The evidence of any preference being granted at that point was even more limited than it was at the interview stage. Moore testified that he had understood that the sheriff would "technically" apply the preference. Ott gave inconsistent testimony, first stating that she was to apply the preference at the final hiring stage, then stating that the sheriff was to do so, and, ultimately, indicating that she had not given the sheriff the opportunity to apply the preference, because Edwards had not been qualified enough to benefit from it. Given those and other inconsistencies, BOLI expressly discredited Ott's testimony. As BOLI summarized the evidence it had heard, "the variety of formulations propounded at the hearing, together with the earlier explanations made prior to the hearing, demonstrate that no method and means of applying the veterans' preference at the end of the process was really devised" at the final hiring stage, much less applied.

In light of the foregoing, BOLI correctly interpreted the veterans' preference law and BOLI's implementing rule when it concluded that petitioner was required to devise and apply a method to give Edwards special consideration at each stage of its promotion process. Substantial reason supports BOLI's conclusion that petitioner did not satisfy that requirement. Accordingly, BOLI did not err in concluding that petitioner violated the veterans' preference law by failing to give Edwards the preference that the statute requires or in ordering petitioner to devise a policy to give that preference, consistent with ORS 408.230(2)(c).

## II.   EMOTIONAL DISTRESS DAMAGES

We now turn to petitioner's arguments challenging BOLI's award of $50,000 in emotional distress damages to Edwards. Before we reach those arguments, we summarize BOLI's reasoning for making that damages award.

BOLI awarded damages on two alternative and independent grounds. First, BOLI awarded damages flowing from Edwards's failure to receive the promotion. BOLI acknowledged that it could only speculate whether Edwards would have received the promotion, had petitioner devised and applied a method to grant him a preference. However, BOLI also recognized that employers should not be able to evade liability where "the employer's own actions * * * prevent the forum from determining the full extent of the harm that may have been caused." To remedy that problem, BOLI announced that it was adopting a *"per se"* rule "that where a veterans' preference is not given, on account of a failure to devise a method to apply the veterans' preference * * *, a veteran's failure to obtain the job or promotion is deemed to flow from the failure to abide by the law." In other words, BOLI presumed that petitioner's failure to devise and apply a method of granting a preference caused Edwards not to receive the promotion.

BOLI's second basis for awarding emotional distress damages to Edwards was his "justifiable perception that he was not being treated in accordance with the law and in accordance with the underlying sentiment of gratitude for his military service that the law exemplifies." Edwards had testified that his experience applying for the promotion made him angry and that the process was frustrating and stressful. He felt that his military service was "being discarded and overlooked." He also testified that he had lost 20 pounds and was irritable as a result of the experience, and that the experience had affected his relationship with his family. He felt that he had been denied the veterans' preference to which he was entitled and that he had had to "come to work and * * * fight for my rights in front of my bosses." BOLI found that Edwards's perception was reasonable because of the "confusing and inconsistent information" that petitioner had communicated to him about the veterans' preference.[8] BOLI also found that the promotion process itself

---

[8] BOLI found that Edwards was aware of facts indicating that petitioner had not granted him the preference to which he was entitled. By statute, petitioner was obligated to explain to Edwards, in writing, why it had not promoted him. *See* ORS 408.230(5) ("If a public employer does not appoint a veteran or disabled veteran to a vacant civil service position, upon written request of the veteran or

had caused Edwards's emotional and physical reactions and that, contrary to petitioner's suggestion, his reactions were "more than just the stress derived from going through litigation." BOLI expressly concluded that Edwards's adverse reaction to the hiring process was a sufficient independent basis to support an award of emotional distress damages.

Petitioner raises three challenges to BOLI's award of emotional distress damages. First, petitioner argues that BOLI improperly created a rule of *"per se* liability" by presuming that petitioner's failure to devise and apply a method of granting a preference led to Edwards's failure to receive the promotion. Second, petitioner argues that BOLI does not have authority to award emotional distress damages in veterans' preference cases. Third, petitioner challenges the amount of damages, arguing that substantial evidence does not support that award.

It is not necessary to address petitioner's first argument, because petitioner does not challenge BOLI's alternative and independent basis for the damages award—that the unlawful hiring process itself caused Edwards's emotional distress. *See, e.g., Strawn v. Farmers Ins. Co.*, 350 Or 521, 527, 256 P3d 100 (2011) ("The proposition that a party cannot seek reversal on appeal by challenging only one of two independent and alternative grounds for a ruling is well-settled and familiar."). Unchallenged, that conclusion alone was sufficient to support BOLI's award of damages.[9]

Petitioner's second argument is unpreserved. Petitioner never argued before the agency that BOLI lacked

---

disabled veteran, the employer, in writing, shall provide the employer's reasons for the decision not to appoint the veteran or disabled veteran to the position."). Petitioner's explanatory letter stated only that Edwards had been the "number one candidate" but that another candidate had been more suitable for promotion. BOLI concluded that the letter provided Edwards with "no description of a meaningful standard by which veterans' preference was applied," suggesting that petitioner had not adequately applied the preference.

[9] Petitioner argues in its reply brief, for the first time, that BOLI arrived at its alternative basis through an incorrect legal conclusion. That argument comes too late, and we decline to consider it. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule[.]"); *Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 608-09, 84 P3d 147 (2004) (declining to review alternative theory for reversal advanced for the first time in reply brief).

legal authority to award Edwards emotional distress damages, even though BOLI expressly notified petitioner that it intended to seek those damages and petitioner had several opportunities to raise that objection. Petitioner recognizes as much, but argues that we should review its second argument as plain error. We may exercise our discretion to consider unpreserved error if the error is "one of law," "apparent, *i.e.*, the point must be obvious, not reasonably in dispute," and appears "on the face of the record." ORAP 5.45(1); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991) (internal quotation marks omitted). But, here, the unpreserved error is not apparent on the record. No Oregon court has analyzed whether BOLI has authority to award emotional distress damages for a violation of the veterans' preference law, and the correctness of petitioner's legal argument is not obvious to us; the correctness of petitioner's position is therefore not beyond reasonable dispute. *See State v. Jordan*, 249 Or App 93, 98, 274 P3d 289, *rev den*, 353 Or 103 (2012) (finding that unpreserved error was "reasonably in dispute" where the court had never decided the issue and did "not necessarily agree" with the argument advanced). Thus, the alleged error is not plain.

As for petitioner's third argument—that substantial evidence does not support BOLI's damages award—we conclude otherwise. As the parties acknowledge, the amount of damages that a complainant is entitled to is an issue of fact. *See Ogden v. Bureau of Labor*, 299 Or 98, 105, 699 P2d 189 (1985) (effects of unlawful employment practice and monetary award "reasonably calculated to * * * eliminate" those effects are questions of fact). When reviewing an order in a contested case, we review issues of fact for substantial evidence. ORS 183.482(8)(c); *Ogden*, 299 Or at 105. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

Petitioner's substantial evidence argument has two parts—one largely legal, the other factual. First, petitioner essentially argues, as a matter of law, that substantial evidence does not support BOLI's finding that Edwards suffered emotional distress, because the only evidence on that point was Edwards's testimony. Contrary to petitioner's

argument, a complainant's testimony, if believed, is sufficient to support a claim for emotional distress damages. *See In the Matter of From the Wilderness*, 30 BOLI 227, 292 (2009); *cf., e.g., Peery v. Hanley*, 135 Or App 162, 165, 897 P2d 1189 (1995) (plaintiff's testimony, if believed, is sufficient to establish causation element of emotional distress claim). Here, Edwards testified that the hiring process was stressful and made him irritable, frustrated, and angry, and that he lost 20 pounds as a result of the experience. He also testified that he felt that his military service was "being discarded and overlooked" and that he had to "come to work and * * * fight for [his] rights in front of [his] bosses." The experience affected his relationship with his family. BOLI expressly found Edwards's testimony "poignant[,]" "substantial," and "convincing." BOLI also found Edwards's testimony that he felt that his military service was being discarded and overlooked "particularly affect[ing]." Because Edwards provided testimony that BOLI believed, substantial evidence supports BOLI's finding that Edwards suffered emotional distress as a result of the hiring process.

Second, petitioner challenges BOLI's valuation of Edwards's emotional distress damages. In determining an emotional distress damages award, BOLI "considers the type of discriminatory conduct, and the duration, frequency, and severity of the conduct. It also considers the type and duration of the mental distress and the vulnerability of the [c]omplainant. The actual amount depends on the facts presented by each complainant." *In the Matter of From the Wilderness*, 30 BOLI at 291-92 (internal citations omitted). Our inquiry is simply whether the evidence in the record would allow a reasonable factfinder to value the emotional distress that Edwards suffered at $50,000.

In valuing Edwards's emotional distress damages as it did, BOLI relied on two of its own prior decisions as guidance. In both cases, BOLI awarded emotional distress damages for stress-related symptoms similar to Edwards's. In the first decision, *In the Matter of Blachana, LLC*, 32 BOLI 220 (2013), *aff'd*, 273 Or App 806, 359 P3d 574, *adh'd to as modified on recons*, 275 Or App 46, 362 P3d 1210 (2015), BOLI awarded emotional distress damages to 11 transgender individuals who had been excluded from a bar because

of their gender identities. *Id.* at 249. One woman in that case testified that she had felt "angry, then hurt and offended" by the bar's actions. *Id.* at 250. She had "stopped going out in public dressed as a woman, limited her social life, and lost 15 pounds because of the stress." *Id.* Based on that testimony, BOLI awarded her $35,000 for her emotional, mental, and physical suffering. *Id.* Another complainant in that case testified that she had "gained 10 pounds, was a little short-tempered and tired at work, and was late to work twice because of her lack of sleep." *Id.* at 251. She had found it "hard to be told you're not welcome somewhere just because of who you are." *Id.* BOLI awarded that complainant $40,000 for her emotional, mental, and physical suffering.

In the second decision, *In the Matter of Crystal Springs Landscapes, Inc.*, 32 BOLI 144, 170, 172 (2012), BOLI awarded an employee $150,000 after her employer first sexually harassed her over a period of three months and later fired her in retaliation for opposing that harassment. There, the employee had suffered nightmares and panic attacks, lost weight, and stopped going to social events. *Id.* at 171-72. In addition, she had had to continue to work with her harassers, who had refused to take her complaints seriously. *Id.* at 170.

In relying on *Blachana* and *Crystal Springs Landscapes*, BOLI explained that the type of distress that Edwards suffered in this case was similar to that of the complainants in those cases. One of the factors that BOLI has historically taken into account when calculating emotional distress awards is the type of emotional distress suffered. *See In the Matter of From the Wilderness*, 30 BOLI at 292. Like the complainants in *Blachana* and *Crystal Springs Landscapes*, Edwards experienced physical signs of stress, including weight fluctuation. His relationships suffered, he was upset, and he felt that he was not receiving the respect to which he was entitled. BOLI's $50,000 award of emotional distress damages was comparable to the awards given in *Blachana* and significantly less than the award given in *Crystal Springs Landscapes* to a complainant who suffered similar symptoms of emotional distress. In light of those decisions, the $50,000 in emotional distress damages awarded in this case is supported by substantial evidence.

## III.   CONCLUSION

In order to comply with ORS 408.230(2)(c), a public employer must devise a method of giving special consideration to veterans and apply that method when making hiring decisions. At a minimum, the employer must form a coherent and stable veterans' preference method that is capable of being applied and evaluated. Further, BOLI correctly concluded that the statute and BOLI's implementing rule require the employer to apply a preference at each stage of a multistage hiring process. BOLI correctly concluded that petitioner failed to devise such a method and apply it in the course of the hiring decision at issue in this case. Accordingly, BOLI correctly concluded that petitioner had violated the veterans' preference law and, therefore, BOLI did not err in ordering petitioner to devise a method to apply the veterans' preference at each applicable stage of a multistage hiring process, consistent with the requirements of ORS 408.230(2)(c). Moreover, substantial evidence in the record supported an award of emotional distress damages to Edwards and BOLI's decision awarding those damages in the amount of $50,000.

Affirmed.