No. 43          August 10, 2017          761

IN THE SUPREME COURT OF THE
STATE OF OREGON

MULTNOMAH COUNTY
SHERIFF'S OFFICE,
*Petitioner on Review,*

*v.*

Rod EDWARDS
and Bureau of Labor and Industries,
*Respondents on Review.*

(BOLI No. 0114; CA A157146; SC S064109)

On review from the Court of Appeals.*

Argued and submitted November 15, 2016.

Jacqueline Kamins, Multnomah County Attorney's Office, Portland, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Jenny M. Madkour, County Attorney for Multnomah County, Portland, and Katherine Thomas, Multnomah County Attorney's Office, Portland.

Carson L. Whitehead, Assistant Attorney General, Salem, argued the cause and filed the brief for respondents on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Sean E. O'Day, League of Oregon Cities, Salem, filed the briefs for *amici curiae,* League of Oregon Cities and Association of Oregon Counties. Also on the briefs was Rob Bovett, Association of Oregon Counties, Salem.

Michael E. Rose, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

_____

* Judicial review of a Final Order of the Bureau of Labor and Industries, dated May 19, 2014. 277 Or App 540, 373 P3d 1099 (2016).

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Flynn, and Duncan, Justices, and Ortega, Judge of the Court of Appeals, Justice pro tempore.**

LANDAU, J.

The decision of the Court of Appeals is affirmed. The final order of the Bureau of Labor and Industries is affirmed.

_____

** Baldwin, J. retired on March 31, 2017, and did not participate in the decision of this case. Brewer, J., retired on June 30, 2017, and did not participate in the decision of this case. Nakamoto, J., did not participate in the consideration or decision of this case.

**LANDAU, J.**

ORS 408.230(2)(c) requires a public employer to "devise and apply methods" of giving veterans and disabled veterans "special consideration" in the employer's hiring process when that hiring process does not rank applicants by means of a score. The issue in this case is whether the Multnomah County Sheriff's Office (county) complied with that requirement when it failed to promote a disabled veteran. The Bureau of Labor and Industries (BOLI) concluded that the county did fail to comply with the statute, as well as administrative rules that implement it. BOLI ordered the county to comply with the law, to train its staff, and to pay the disabled veteran $50,000 in damages for his emotional distress.

The county appealed, challenging BOLI's conclusion that the county had violated ORS 408.230(2)(c). It also challenged the validity of the administrative rules that BOLI concluded the county had violated and BOLI's authority to award damages for emotional distress. The Court of Appeals affirmed. *Multnomah County Sheriff's Office v. Edwards*, 277 Or App 540, 373 P3d 1099 (2016). We conclude that BOLI correctly construed ORS 408.230(2)(c) and that, given the unchallenged findings in the agency's final order, there is no basis for the county's contention that BOLI erred in finding a violation of that statute. Our conclusion with respect to the statutory violation obviates the need to consider the validity of BOLI's administrative rules, so we do not reach that issue. As for BOLI's authority to award damages for emotional distress, the county failed to preserve that argument, so we similarly decline to address it. We therefore affirm the decision of the Court of Appeals and the final order of BOLI.

A brief summary of the relevant statutes and administrative rules provides useful context. ORS 408.230(1) requires public employers to grant a preference to veterans and disabled veterans who apply for a vacant civil service position or seek a promotion to a civil service position. The veteran or disabled veteran applicant must meet the minimum qualifications and any special qualifications for the position. ORS 408.230(1)(b). In addition, the applicant must successfully complete either an initial application screening

process or a civil service test that the public employer administers to establish eligibility for the position. ORS 408.230(1)(a)(A).

ORS 408.230(2) then sets out how public employers must grant preference for veterans and disabled veterans:

"(a)   For an initial application screening used to develop a list of persons for interviews, the employer shall add five preference points to a veteran's score and 10 preference points to a disabled veteran's score.

"(b)   For an application examination, given after the initial application screening, that results in a score, the employer shall add preference points to the total combined examination score without allocating the points to any single feature or part of the examination. The employer shall add five preference points to a veteran's score and 10 preference points to a disabled veteran's score.

"(c)   For an application examination that consists of an interview, an evaluation of the veteran's performance, experience or training, a supervisor's rating or any other method of ranking an applicant that does not result in a score, the employer shall give a preference to the veteran or disabled veteran. An employer that uses an application examination of the type described in this paragraph shall devise and apply methods by which the employer gives special consideration in the employers hiring decision to veterans and disabled veterans."

The statute thus provides three different ways that public employers must grant preference for veterans and disabled veteran applicants; the method of preference depends on the type of selection process the public employer uses. First, for any initial application screening that is used to develop a list of applicants to interview, the employer must add a specified number of points to the veteran's or disabled veteran's score. ORS 408.230(2)(a). Second, for an examination that is given after the initial application screening and that results in a score, the employer must again "add preference points to the total combined examination score." ORS 408.230(2)(b). Third, if the employer uses any other method of ranking that does not result in a score, the employer must "devise and apply methods by which the employer gives

special consideration in the employer's hiring decision to veterans and disabled veterans." ORS 408.230(2)(c).

The law makes clear that those preferences "are not a requirement that the public employer appoint a veteran or disabled veteran to a civil service position." ORS 408.230(3). Rather, the law provides that the employer is required to appoint a veteran or disabled veteran only if the results of the evaluation process, combined with the preferences, "are equal to or higher than the results of an application examination for an applicant who is not a veteran or disabled veteran." ORS 408.230(4).

A violation of the preference law is an unlawful employment practice. ORS 408.230(6). A veteran or disabled veteran who claims to be aggrieved by such an unlawful employment practice may file a complaint with the Commissioner of BOLI. ORS 408.230(7).

BOLI adopted administrative rules to enforce the requirements of ORS 408.230. Among other things, those rules provide that,

> "[a]t each stage of the application process, a public employer will grant a preference to a veteran or disabled veteran who successfully completes an initial application screening or an application examination or a civil service test the public employer administers to establish eligibility for a vacant civil service position."

OAR 839-006-0450(2).

With that background in mind, we turn to the facts of this case, which we take from the uncontested findings in BOLI's final order. The county posted an internal announcement seeking applications for a promotion from sergeant to lieutenant. Three individuals applied, each of whom met the minimum qualifications for the position. One of the three applicants, Edwards, qualified for preference as a disabled veteran.

The job announcement for the lieutenant position stated that the county's hiring decision would be based on a letter of interest, a resume, a "360 degree review" consisting of information from "civilian[s]" and coworkers, and an

internal command staff interview. The announcement did not mention a preference for veterans or disabled veterans.

The county, after reviewing the letters of interest and resumes of the three applicants, decided to grant all three an internal command staff interview. The letter of interest and resume that Edwards submitted showed some carelessness that had not been exhibited by the other applicants. Nevertheless, he was granted an interview along with the others.

The county then conducted the 360 degree review for the three applicants. Nine people responded to the county's survey concerning Edwards, including an applicant who was competing with Edwards for the position. The comments concerning Edwards were less positive than the comments concerning the other applicants.

The internal command interview followed. The interviewers were Undersheriff Moore, Chief Deputy Gates, and Captain Reiser, who was Edwards's immediate supervisor. After the interview, each of the interviewers independently ranked the applicants. Each of those interviewers ranked Edwards third. There is no dispute that there were sound, job-related reasons for the rankings.

The interviewers' recommendations were forwarded to Staton, the Multnomah County Sheriff. Staton met with the county's human resources manager, Ott. Following that meeting, the position was offered to one of the other applicants, not Edwards.

Edwards asked the county for a written explanation of its decision not to promote him. Ott, as the manager of human resources, responded. She explained that, "[b]ecause there were no numerical tests involved in which to apply your veteran preference points, we applied your points as you went into this process, and you were the number one candidate at the top of the list of three potential candidates for promotion."

Edwards then filed a complaint with BOLI, alleging that the county had committed an unlawful employment practice by failing to give him the preferential treatment that ORS 408.230 requires. BOLI investigated the

complaint. Following the investigation, the agency issued a notice of hearing and formal charges, alleging that the county had failed to "devise and apply methods" of granting Edwards the preferential treatment that ORS 408.230(2)(c) requires.

The hearing revealed that the county has no written policy describing the methods that it applies to give preference to veterans and disabled veterans. The only evidence concerning the county's policy came from testimony and exhibits produced at the hearing.

That evidence consisted of conflicting explanations from county personnel about how the disabled veteran preference was applied to Edwards's application. Ott testified that it was her responsibility—and not that of the internal command interviewers—to apply the preference. At one point, she stated that the preference applied "at the beginning of the process." At another point, she explained that, at the end of the hiring process, she told Sheriff Staton that the disabled veteran's preference had been applied to Edwards, but it was not sufficient to "get him up to being the number one candidate." But she also testified that she had told Staton that, "going into this process," Edwards "is his number one candidate."

Ott also stated that, if Edwards had been "marginally close to the top two candidates, my responsibility was to say to the Sheriff that, [Edwards] gets the job * * *. And that could not occur because he was not competitive; he was not ready for promotion based on the process." At still another point, Ott explained that she had advised the internal command interviewers that Edwards was the "top candidate going into the process." She also stated that she had told the interviewers that, if Edwards scored "even a competitive third * * * the job was his and that was the direction given to them." But later, she said that her "competitive third" remark was "not my direction to anybody."

Undersheriff Moore testified that he had understood from Ott that Edwards was considered "the number one prospect going into the process," and that was how the disabled veteran's preference applied. He did not view the preference as applying to each of the components of the

application process—the letter of interest and resume, the 360 degree review, and the interview—individually. But he also stated that he "jelled up my kind of beliefs around this and made one set of recommendations," so that any veteran's preference "applied to all." Moore said that, after the interview, he evaluated whether Edwards was "ready to be promoted." His understanding of the process was that, if Edwards had "the requisite skill set," then "he would have the job, regardless of the qualifications of the other candidates, because 'he was entitled to it as a disabled veteran.'" Moore did not mention the disabled veteran's preference in his recommendations to Sheriff Staton.

Chief Deputy Gates testified that he did apply a disabled veteran's preference in considering Edwards to be "the top candidate at each stage of the process" and that he "needed a reason not to keep Sgt. Edwards as the number one candidate." At the same time, he also testified that he did not apply the preference himself. Rather, he evaluated each component—the letter of interest and resume, the 360 degree review, and the interview—"on its own merits."

After the hearing, BOLI issued a final order containing extensive findings of fact and ultimately concluded that the county had failed to comply with ORS 408.230(2). In brief, BOLI concluded that the county had failed to devise any method of giving preference to disabled veterans in Edwards's situation. BOLI found that the county had offered "confusing and inconsistent" explanations as to how it applied the disabled veteran's preference. BOLI cited in particular the inconsistencies in Ott's, Moore's, and Gates's testimony. There were conflicting explanations, BOLI noted, about when the internal command interviewers were advised about the preference and how it would be applied. BOLI observed that there also was inconsistent testimony about what giving Edwards preference even meant. BOLI noted that witnesses testified variously that it meant that Edwards was the "number one candidate going into the process," that it was Edwards's job if he showed himself "ready for promotion," and that it was his job so long as he was "even a competitive third." BOLI further concluded that, if the county had devised a method of giving preference to

disabled veterans, it failed to apply that preference at each stage of the hiring process, as BOLI's administrative rules require.

BOLI ordered that the county adopt a "coherent, consistent, written and reasonable method by which to apply veterans' preference at each stage of any hiring or promotion decisions that must meet the criteria of ORS 408.230." It further ordered the county to cease and desist from violating the veterans' preference statute, to train its staff, and to pay the sum of $50,000 in damages for Edwards's emotional distress resulting from the county's violation of the law.

The county appealed. It did not take issue with any of the findings of fact in BOLI's final order. It did contest the final order in several other respects. First, the county argued that BOLI erred in concluding that it had failed to "devise and apply methods" for granting Edwards disabled veteran's preference. According to the county, it satisfied the statute so long as it gave Edwards some preference, regardless of whether it devised a particular method of doing so. Second, it argued that the agency had exceeded its statutory authority in adopting administrative rules that require such a veteran's preference "at each stage" of the hiring process. Third, it argued that BOLI lacked statutory authority to award damages for emotional distress and that, in any event, substantial evidence did not support BOLI's decision to award such damages in this case.

The Court of Appeals rejected each of those arguments. The court concluded that BOLI correctly interpreted ORS 408.230(2)(c) to require the county to "form a coherent and stable method and apply that method." *Multnomah County Sheriff's Office*, 277 Or App at 553. It concluded that BOLI's rules requiring public employers to apply such methods "at each stage" of the hiring process are valid. *Id.* at 554-57. The court determined that the county's challenge to BOLI's authority to award damages for emotional distress was unpreserved and that the county's substantial-evidence challenge was without merit. *Id.* at 560-64.

On review, the county again advances three arguments. First, the county argues that the Court of Appeals

erred as a matter of law in construing ORS 408.230(2)(c) to require a particular method of granting preference to veterans and in concluding that the county violated that statute. Second, the county challenges BOLI's authority to adopt administrative rules requiring that public employers apply a veteran's preference at every stage of the hiring process. Third, the county challenges the agency's authority to award damages for emotional distress.

We begin with the county's contention that the Court of Appeals erred in construing ORS 408.230(2)(c). In the county's view, the statutory requirement to "devise and apply methods" of granting veterans' preference "was intended to provide employers with flexibility in determining how to apply the veterans' preference in a hiring process that does not result in a score—no single, uniform method is required." As the county sees it, the statute provides for an "informal process" that may "vary between recruitments." It is sufficient, the county contends, "for an employer to know how it will apply the preference in a particular hiring process"; no preexisting policy is required.

BOLI argues that the Court of Appeals correctly construed ORS 408.230(2)(c). It agrees with the county that the statute permits flexibility in devising and applying such a method and that nothing in ORS 408.230(2)(c) requires a single, uniform method to be applied in all hiring processes. BOLI nevertheless insists that the statute requires a public employer to have at least some discernible "stable and coherent method of giving a veteran special consideration and then apply that method to its hiring decision." The undisputed evidence, BOLI contends, shows that the county devised no such method at all.

The parties' contentions require us to determine what ORS 408.230(2) means when it says that a public employer must "devise and apply methods" of granting preference to veterans and disabled veterans applying for employment. When a statute has been interpreted by an administrative agency charged with enforcing it, there may be occasion to defer to the agency's construction, depending on the nature of the term at issue. *Springfield Education Assn v. School Dist.*, 290 Or 217, 223-24, 621 P2d 547 (1980).

In this case, the terms at issue are not so precise as to obviate the need to interpret them, nor are they so broadly delegative in nature as to invite deference to the agency's construction of them. Rather, they are inexact, requiring us to determine the meaning most likely intended by the legislature that enacted it, without any deference. *OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 585, 341 P3d 701 (2014). To determine the intended meaning of a statute, we use the analytic framework set forth in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), which requires us to look to the text of the statute in its context along with helpful legislative history. *Id.*

As we described earlier, ORS 408.230(2)(c) provides:

> "For an application examination that consists of an interview, an evaluation of the veteran's performance, experience or training, a supervisor's rating or any other method of ranking an applicant that does not result in a score, the employer shall give a preference to the veteran or disabled veteran. An employer that uses an application examination of the type described in this paragraph shall *devise and apply methods* by which the employer gives special consideration in the employer's hiring decision to veterans and disabled veterans."

(Emphasis added.) At issue is what the statute means when it requires public employers to "devise" a "method" of granting preference to a veteran or disabled veteran. Neither term is defined in the statute itself. When the legislature does not provide a definition of a statutory term, we generally presume that it intended the terms to mean what they mean in ordinary usage. *State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015).

*Webster's* defines "devise" as follows:

> "**1 a :** to form in the mind by new combinations of ideas, new applications of principles, or new arrangement of parts **:** formulate by thought **:** CONTRIVE, INVENT, PLAN, SCHEME <~ an engine> <*devising* a new style in hats>"

*Webster's Third New International Dictionary* 619 (unabridged ed 2002). The *American Heritage Dictionary*

offers a similar definition: "[t]o form, plan, or arrange in the mind; design or contrive: *devised a new system for handling mail orders.*" *American Heritage Dictionary of the English Language* 497 (5th ed 2011).

In ordinary usage, to "devise" connotes more than just acting in an *ad hoc* fashion. For example, throughout the Oregon Revised Statutes, the legislature has used the term to refer to the creation of systems, programs, and plans. *See, e.g.*, ORS 80.101(1) ("The Secretary of State shall devise a method or system to provide approved unique identifiers for persons filing documents."); ORS 240.145(4) (the Administrator of the Personnel Division of the Department of Administrative Services shall "[d]evise plans for and cooperate with appointing authorities and other supervisory officers in the conduct of employee training programs."); ORS 291.100(2) ("The Oregon Department of Administrative Services shall devise and supervise statewide financial management systems for all state agencies"); ORS 344.530(6) (the Department of Human Services shall "[d]evise means for the sale and distribution of the products of [rehabilitation] facilities."); ORS 336.227(1) (the Oregon Health Authority shall "[d]evise a public information program"); ORS 536.231 ("The Water Resources Commission shall devise plans and programs for the development of water resources of this state."); ORS 830.110(2) (the Marine Board shall "[d]evise a system of identifying numbers for boats, floating homes and boathouses").

Consistently with that usage, ORS 408.230(2)(c) specifies that what must be "devise[d]" is a "method" of granting preference to veterans and disabled veterans. *Webster's* defines "method" as

"**1 :** a procedure or process for attaining an object: as *** **b** (1) **:** a systematic procedure, technique, or set of rules employed in philosophical inquiry *** **2 a :** orderly arrangement, development, or classification **:** PLAN, DESIGN ***

"* * * * *

"METHOD can apply to any plan or procedure but usu[ally] implies an orderly, logical, effective plan or procedure, connoting also regularity."

*Webster's* at 1422-23. Similarly, the *American Heritage Dictionary* defines "method" as follows:

> "**1.** A means or manner of procedure, especially a regular and systematic way of accomplishing something: *a simple method for making a pie crust; mediation as a method of solving disputes.* \* \* \*

> "**2.** Orderly arrangement of parts or steps to accomplish an end: *random efforts that lack method.*

> "**3.** The procedures and techniques characteristic of a particular discipline or field of knowledge: *This field course gives an overview of archaeological method.*

> "\* \* \* \* \*

> "These nouns refer to the plans or procedures followed to accomplish a task or attain a goal. Method implies a detailed, logically ordered plan."

*American Heritage Dictionary* at 1107-08.

The ordinary meanings of the words "devise" and "method," when considered together, suggest that what ORS 408.230(2)(c) requires is that public employers formulate some sort of standard or regular procedure that the public employer develops in advance and then applies in a hiring process. As noted in *Webster's*, although the word "method" can refer to any sort of plan or procedure, it usually refers to "an orderly, logical, effective plan or procedure, connoting also regularity."

We see no indication from the text or context of ORS 408.230(2)(c) that the legislature intended anything other than what the statute's terms ordinarily mean. Rather, the instruction to "devise and apply methods" of veterans' preference—as opposed to, say, "apply a preference"—suggests that the legislature intended public employers to create some kind of discernible plan for applying veterans' preference rather than taking an *ad hoc* approach.

The county argues that the evolution of the text of ORS 408.230(2)(c) supports a contrary reading of that statute. The county observes that, before 2007, state law required that there be a "uniform method" for giving preference to veterans and disabled veterans in an unscored

hiring process. That changed in 2007, when the legislature amended the statute and removed the word "uniform." In the county's view, that change supports its contention that the statute, as amended, does not require public employers to adopt specific methods of granting preference to veterans and disabled veterans.

The county correctly identifies a textual change in the statute, but it is mistaken about the significance of that change. Before 2007, the law was unclear about precisely how veterans were to be given preference, in cases in which the public employer relied on unscored application examinations. The law provided:

> "If the test consists of interviews, performance, evaluation of experience and training, a supervisor's rating or any other method of ranking applicants that does not result in a score, preference must still be provided to veterans and disabled veterans. Preference does not mean that veterans must be appointed to vacant positions, but does provide a uniform method by which special consideration is given to eligible veterans and disabled veterans seeking public employment."

ORS 408.230(1) (1999). Although the law referred to a "uniform method" of giving "special consideration," the law did not actually specify how the special consideration was to factor into the actual hiring decision.

Such ambiguities prompted the introduction of Senate Bill (SB) 822 in the 2007 legislative session, at the request of the Veterans of Foreign Wars Employment and Civil Service Committee. The bill proposed to delete the last sentence of ORS 408.230(1) (1999) and replace it with the requirement that "[a]n employer that uses an examination of the type described in this paragraph shall devise and apply methods by which the employer gives special consideration in the employer's hiring decision to veterans and disabled veterans." As Robert Thornhill, chairman of that committee, testified, under the then-existing law, the veterans' preference "does not enter into the current selection process in any fashion whatsoever" for an unscored applicant. Testimony, Senate Education and General Government Committee, SB 822, April 10, 2007, Ex A (statement of Robert Thornhill).

SB 822 was intended to make clear that "meaningful preference" is given in the "selection process" for both scored and unscored application processes. *Id.* The Deputy Director of the Oregon Department of Veterans' Affairs, Paula Brown, likewise testified that the purpose of the bill was to "enhance the employment preference" for veterans. Audio Recording, Senate Education and General Government Committee, SB 822, April 10, 2007 at 47:52 (statement of Paula Brown).

Supporters of the bill did explain that it provided "flexibility in determining how preference is to be granted for these positions." Testimony, Senate Education and General Government Committee, SB 822, April 10, 2007, Ex A (statement of Robert Thornhill). But that referred to the fact that the bill did not require any pre determined method of granting the preference to be applied by all employers in all cases. Nothing in the legislative history suggests that the legislature intended to afford public employers the "flexibility" to avoid devising a process for granting the preference at all. To the contrary, the law was designed to ensure that public employers came up with actual methods of granting veterans preference in the hiring process.

With that interpretation of ORS 408.230(2) in mind, we turn to the question whether BOLI correctly determined that the county failed to comply with the statute. The county argues that it fully complied with the statute in that "[e]ach person in the hiring process consistently stated that Edwards would be treated as the number one candidate going into the interview process." Granted, the county says, different witnesses "had his or her own articulation" of what that meant. But the fact remains, the county urges, that those witnesses "had a consistent understanding that Edwards would be given a preference through granting him an interview and treating him as the number one candidate." In response, BOLI argues that the county's arguments cannot be reconciled with the undisputed factual findings in its final order.

BOLI is correct. To be sure, the county's version of the facts is supported by references to testimony and exhibits in the record. On judicial review of an administrative agency's final order, however, that is beside the point.

In such cases, we do not examine the record to determine whether evidence supports a view of the facts different from those found by the agency. If challenged, an agency's findings of fact are binding unless those findings are not supported by substantial evidence in the record as a whole. ORS 183.482(8)(c); *Younger v. City of Portland*, 305 Or 346, 356, 752 P2d 262 (1988). And if not challenged, the agency's findings constitute the facts for the purposes of judicial review. *Jefferson County School Dist. No. 509-J v. FDAB*, 311 Or 389, 393 n 7, 812 P2d 1384 (1991).

In this case, the county did not challenge any of the findings in BOLI's final order. As a result, those findings are binding for the purposes of our review. And they are fatal to the county's argument. In contrast with the county's version of events, BOLI found that the county had not adopted a consistent method of granting veterans preference in the hiring process. To the contrary, BOLI found that the witnesses for the county offered "confusing and inconsistent" explanations for its hiring process and that they could not agree on what granting a disabled veteran's preference meant, who would apply it, or when it would be applied. We conclude that BOLI did not err in determining that the county failed to comply with ORS 408.230(2)(c).

We briefly turn to the county's second argument, that BOLI exceeded its authority in adopting administrative rules that require public employers to apply a method of granting preference at "each stage" of the hiring process. Given our conclusion that BOLI correctly determined that the county failed to devise and apply *any* method of granting a preference to veterans or disabled veterans in this case, whether it applied such a method at "each stage" is a moot point. Accordingly, it is not necessary for us to determine the validity of BOLI's administrative rule, and we express no opinion on the matter one way or the other.

Finally, we turn to the county's assertion that BOLI lacked statutory authority to award damages to Edwards for emotional distress. The county concedes that its assertion was not preserved. It nevertheless asks that we review the matter because the error is "jurisdictional," and such errors may be raised at any time, even for the first time on appeal

or judicial review. BOLI responds that the county uses the term "jurisdictional" too loosely and that the exception to the requirement of preservation pertains only to claims of a lack of subject-matter jurisdiction.

We agree with BOLI. This court has long held that the ordinary rule requiring preservation of claims of error does not apply when the claim is that a lower court lacked "subject-matter jurisdiction." *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 384, 8 P3d 200 (2000) (party may raise lack of subject-matter jurisdiction "at any time, including for the first time on appeal"). The same basic principle has been applied to administrative law cases. If a matter concerns the "jurisdiction" of an agency, then the court may entertain the issue regardless of preservation. This court's opinion in *SAIF v. Shipley*, 326 Or 557, 561 n 1, 955 P2d 244 (1998), illustrates the principle.

In *Shipley*, the claimant requested that his employer reopen a closed claim for an on-the-job knee injury. He argued that his latest medical treatments were compensable as medical services related to an originally accepted claim. His employer denied the request, but the Workers' Compensation Board set aside the denial and found the medical services claim compensable. The employer sought judicial review of the board's decision and asserted, for the first time, that the board lacked jurisdiction to hear medical services claims. The employer argued that relevant statutes conferred exclusive jurisdiction over such claims on the Director of the Department of Consumer and Business Services. *Id.* at 560-61.

This court addressed the issue, in spite of the fact that it had not previously been raised. The court explained that "[a]n argument that the lower tribunal lacked jurisdiction may be raised for the first time on appeal." *Id.* at 561 n 1. That is so, the court explained, because "[t]he parties may not waive lack of subject matter jurisdiction." *Id.*

In the context of that case law, the term "jurisdiction" does not refer to the correctness of a particular decision of a court or agency. In non-administrative law cases, it refers to *subject-matter* jurisdiction, that is, the authority

to exercise judicial power. *See, e.g.*, *State v. Nix*, 356 Or 768, 780, 345 P3d 416 (2015) (referring to subject-matter jurisdiction as possession of "judicial power to act"). The rationale for that limitation is that the authority of a court to exercise judicial power cannot be conferred by waiver or a failure to object. *Wink v. Marshall*, 237 Or 589, 592, 392 P2d 768 (1964) (subject-matter jurisdiction "cannot be conferred by the parties by consent, nor can the want of jurisdiction be remedied by waiver, or by estoppel"). Thus, while judicial orders entered when a court lacked subject-matter jurisdiction may be attacked "at any time and any place, whether directly or collaterally," other orders may be challenged only directly, in a preserved claim of error. *PGE v. Ebasco Services, Inc.*, 353 Or 849, 856, 306 P3d 628 (2013) (quoting *State v. McDonnell*, 343 Or 557, 562-63, 176 P3d 1236 (2007)).

The same distinction holds in administrative law cases. Challenges to an agency's "jurisdiction" are limited to those concerning the agency's authority to act at all with respect to the category of matters before it. As this court explained in *Diack v. City of Portland*, 306 Or 287, 293, 759 P2d 1070 (1988), "'[j]urisdiction' depends on whether the matter is one that the legislature has authorized the agency to decide." *See also Planned Parenthood Assn v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984) ("In the proper sequence of analyzing the legality of action by officials under delegated authority, the first question is whether the action fell within the reach of their authority *** described as 'jurisdiction.'"). Just as subject-matter jurisdiction cannot be conferred by consent, waiver, or estoppel, an administrative agency's "jurisdiction" in this sense may not be either. *Diack*, 306 Or at 293. As a result, the issue may be raised for the first time on judicial review. *Id.*

That is not so when a challenge targets the lawfulness of an agency's exercise of authority conferred on it. In such cases, challenges to the lawfulness of agency action must comply with ordinary rules of preservation of error. Thus, for example, in *O'Hara v. Board of Parole*, 346 Or 41, 203 P3d 213 (2009), the petitioner argued that the Board of Parole violated various statutes and administrative rules in conducting a hearing without allowing him to call witnesses

and in failing to issue subpoenas. There was no question concerning the agency's "jurisdiction" to conduct the hearing. The only issue was whether the agency conducted the hearing in accordance with relevant statutes and administrative rules. In that case, the court concluded that, before addressing the merits of the petitioner's contentions, it had to determine whether they had been properly preserved. *Id.* at 47-49.

In this case, the legislature has conferred on BOLI "general jurisdiction and power for the purpose of eliminating and preventing unlawful practices." ORS 659A.800(2). The term "unlawful practice" encompasses "any unlawful employment practice," which includes a practice "that is specifically denominated in another statute *** as an unlawful practice." ORS 659A.001(12). ORS 408.230(6) is just such a statute that specifically denominates violation of the veterans' preference law as an unlawful practice. If BOLI finds that an employer has engaged in an unlawful practice, it is authorized to

> "[e]liminate the effects of the unlawful practice that the respondent is found to have engaged in, including but not limited to paying an award of actual damages suffered by the complainant and complying with injunctive or other equitable relief."

ORS 659A.850(4)(a)(B).

There can be no question that BOLI possessed "jurisdiction" over this matter. The county's argument concerning the agency's award of damages for emotional distress concerns the lawfulness of BOLI's exercise of the authority granted to it. That is not the sort of claim of error that may be raised for the first time on judicial review.

The county argues that, in any event, we should reach the issue as a matter of plain error. To qualify as "plain error," an asserted error must be one of law, apparent on the face of the record, and not reasonably in dispute. *State v. Serrano*, 355 Or 172, 179, 324 P3d 1274 (2014). In this case, the county's claim of error fails to satisfy the third requirement; that is to say, BOLI's error—if any—is not so obvious that we can say it is beyond reasonable dispute.

The decision of the Court of Appeals is affirmed. The final order of the Bureau of Labor and Industries is affirmed.