Argued and submitted April 26; portion of general judgment regarding deed provisions reversed and remanded, portion of general judgment regarding declaration provisions affirmed, supplemental judgment affirmed October 5, 2022

Persida MYERS,
*Petitioner-Respondent*
*Cross-Appellant,*

*v.*

OWNERS OF RECORD OF
THAT CERTAIN REAL PROPERTY DESCRIBED AS
LOT 1, TRACT C, REPLAT OF TRACT C DEER PARK I,
DESCHUTES COUNTY, OREGON
and Western Title & Escrow Company,
*Respondents below,*

*and*

SUNRIVER OWNERS ASSOCIATION
and Sunriver Resort Limited Partnership,
*Respondents-Appellants*
*Cross-Respondents.*

Deschutes County Circuit Court
19CV24112; A174633

519 P3d 886

Appellants, Sunriver Owners Association (SROA) and Sunriver Resort Limited Partnership (together, Sunriver), and cross-appellant, Myers, appeal and cross-appeal, respectively, a judgment entered in a proceeding under ORS 93.272. Myers owns property in Sunriver that is subject to two groups of provisions limiting the use of the property: First, a deed to the property includes provisions that reserve part of the property for open space and other parts for athletic fields and parking. Second, two declarations include provisions that limit allowed uses of the property to certain commercial uses. Myers petitioned the circuit court to remove the provisions in the deed and the provisions in the declarations from the title to the property through the procedure set out in ORS 93.272. The court concluded that the challenged provisions in the deed violated ORS 93.270 and, consequently, entered a judgment removing them from the title to the property. As to the challenged provisions in the declarations, the court held that it lacked subject matter jurisdiction to hear Myers's challenge and, accordingly, dismissed that part of the petition. In a supplemental judgment, the court denied Sunriver's request for attorney fees on the part of the claim regarding the declarations. Sunriver appeals, challenging the general judgment as to the deed provisions. Myers cross-appeals, challenging the general judgment's dismissal of the petition as to the declaration provisions. SROA has raised a supplemental assignment of error, in which it challenges the supplemental judgment denying attorney fees to it as to the declaration provisions. *Held*: On appeal, the Court of Appeals reversed the part of the general judgment relating to the provisions in the deed, because

the challenged provisions in the deed do not violate ORS 93.270. On cross-appeal, the court affirmed the circuit court's determination that it lacked subject matter jurisdiction over the petition as to the declaration provisions.

Portion of general judgment regarding deed provisions reversed and remanded; portion of general judgment regarding declaration provisions affirmed; supplemental judgment affirmed.

Raymond D. Crutchley, Judge.

Josh Newton argued the cause for appellants-cross-respondents. Also on the briefs were Karnopp Petersen LLP and Bruce H. Cahn and Lane Powell PC. Also on the supplemental brief was Karnopp Petersen LLP.

Bruce V. Lepore argued the cause for respondent-cross-appellant. Also on the briefs was Harker Lepore LLC.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JAMES, P. J.

Portion of general judgment regarding deed provisions reversed and remanded; portion of general judgment regarding declaration provisions affirmed; supplemental judgment affirmed.

**JAMES, P. J.**

Appellants, Sunriver Owners Association (SROA) and Sunriver Resort Limited Partnership (together, Sunriver),[1] and cross-appellant, Myers, appeal and cross-appeal, respectively, a judgment entered in a proceeding under ORS 93.272. Myers owns property in Sunriver that is subject to two groups of provisions limiting the use of the property: First, a deed to the property includes provisions that reserve part of the property for open space and other parts for athletic fields and parking. Second, two declarations include provisions that limit allowed uses of the property to certain commercial uses. Myers petitioned the circuit court to remove the provisions in the deed and the provisions in the declarations from the title to the property through the procedure set out in ORS 93.272, which allows a property owner to petition the court to remove "a provision that is in violation of ORS 93.270" from the title to property. The court concluded that the challenged provisions in the deed violated ORS 93.270 and, consequently, entered a judgment removing them from the title to the property. As to the challenged provisions in the declarations, the court held that it lacked subject matter jurisdiction to hear Myers's challenge and, accordingly, dismissed that part of the petition. In a supplemental judgment, the court denied Sunriver's request for attorney fees on the part of the claim regarding the declarations.

Sunriver appeals, challenging the general judgment as to the deed provisions. Myers cross-appeals, challenging the general judgment's dismissal of the petition as to the declaration provisions. SROA has raised a supplemental assignment of error, in which it challenges the supplemental judgment denying attorney fees to it as to the declaration provisions. As explained below, on appeal, we reverse the part of the general judgment relating to the provisions in the deed, because the challenged provisions in the deed

---

[1] With the exception of SROA's supplemental assignment of error, discussed at the end of this opinion, the two Sunriver entities have filed joint briefs on appeal. Below, they litigated the case separately but, with respect to the issues addressed in this opinion, they made the same motions and asserted similar arguments. For convenience, throughout this opinion, except the last section, we refer to them as Sunriver, in the singular.

do not violate ORS 93.270. On cross-appeal, we affirm the court's determination that it lacked subject matter jurisdiction over the petition as to the declaration provisions. We also affirm the supplemental judgment.

Because both the appeal and the cross-appeal concern the operation of ORS 93.270 and ORS 93.272, we set out those provisions before considering the parties' arguments. Those provisions prohibit, and provide a remedy for, certain types of discrimination imposed through the chain of title of real property. ORS 93.270 provides, as follows:

> "(1)   A person conveying or contracting to convey fee title to real property, or recording a declaration under ORS 94.580, may not include in an instrument for that purpose a provision:
>
> "(a)   Restricting the use of the real property by any person or group of persons by reason of race, color, religion, sex, sexual orientation, gender identity, national origin or disability.
>
> "(b)   *Restricting the use of the real property*:
>
> "(A)   As a certified or registered family child care home pursuant to ORS 329A.250 to 329A.450 or as the premises of an exempt family child care provider participating in the subsidy program under ORS 329A.500; or
>
> "(B)   *By any home or facility that is licensed under ORS 443.400 to 443.455 or 443.705 to 443.825 to provide residential care alone or in conjunction with treatment or training or a combination thereof.*"

(Emphases added.)

ORS 93.272 provides a procedure for removing provisions that violate ORS 93.270 from the title to property. With an exception not relevant here,

> "any owner of record of real property that is subject to an instrument conveying or contracting to convey fee title to the property, or a declaration recorded under ORS 94.580, that contains a provision that is in violation of ORS 93.270 may file a petition to remove that provision from the title to the property."

ORS 93.270(1). The petition is to be filed in the circuit court for the county in which the property is located. *Id*. After

notice to all owners of record, the court may hold a hearing on the petition to decide "whether the provision that is the subject of the petition is in violation of ORS 93.270." ORS 93.272(5). If it is, the remedy is removal of the provision from the title:

> "If the court finds that the provision is in violation of ORS 93.270, the court shall enter a judgment removing the provision from the title to the property.
>
> "If a court finds only part of a provision to be in violation of ORS 93.270 under this section, the court shall enter a judgment removing only that part of the provision that is in violation."

ORS 93.272(5), (6) (internal numbering omitted). "If the court finds that the provision is not in violation of ORS 93.270, the court shall dismiss the petition." ORS 93.272(5).

## APPEAL

With that background in mind, we turn to the first and second assignments of error on appeal, in which Sunriver challenges the circuit court's determination that the challenged deed provisions violate ORS 93.270(1)(b)(B). The question on appeal is whether a provision in a deed that uniformly limits all or nearly all development of the property "is in violation of" ORS 93.270(1)(b)(B). ORS 93.272(5). As explained below, we conclude that such a provision does not violate that statute.

The relevant facts are undisputed. Myers petitioned the court to remove from the title to her property restrictions imposed in subsections 5(a) to (d) of a 1983 warranty deed that transferred what is now her property from the developer to Sunriver Preparatory School.[2] The deed provides, as follows:

"5. SUNRIVER OWNERS ASSOCIATION Grantor hereby imposes the following restrictions on the development and use portions of the above described real property:

"(a)   The following described real property shall be the only portion of Tract C, Deer Park I, Deschutes County, Oregon, upon which may be located any building:

---

[2] The property that was transferred to the school in the deed at issue has since been replatted. Myers co-owns one of the three lots that were created in the replat.

"A parcel[3] of land containing 3.59 acres, more or less, located in Tract C, plat of DEER PARK I, Deschutes County, Oregon, being more particularly described as follows: [Metes and bounds description];

"(b)   The following described real property shall be limited in use to an athletic field or park only:

"A parcel of land containing 2.31 acres, more or less, located in Tract C, plat of DEER PARK I, Deschutes County, Oregon, being more particularly described as follows: [Metes and bounds description];

"(c)   The following described real property shall be limited in use to a parking area only:

"A parcel of land containing 1.03 acres, more or less, located in Tract C, plat of DEER PARK I, Deschutes County, Oregon, being more particularly described as follows: [Metes and bounds description];

"(d)   All other portions of Tract C, Deer Park I, Deschutes County, Oregon, not described above in paragraph 5 (a), (b) and (c), shall be maintained as open space and shall not be subject to any development of any kind, subject, however to reasonable cleanup and maintenance[.]"

Myers now co-owns part of the property described in the deed, and she intends to use it for a "home or facility that is licensed under ORS 443.400 to 443.455 or 443.705 to 443.825 to provide residential care alone or in conjunction with treatment or training or a combination thereof," ORS 93.270(1)(b)(B). Throughout this opinion, we refer to that type of facility as a licensed residential facility.

Myers petitioned the circuit court under ORS 93.272 to remove the provisions set out above from the title to her property. She did not contend or introduce evidence in the circuit court that the deed provisions entirely prevent her from using her property for a licensed residential facility, but, rather, argued that they prevent her from using some parts of her property—parts reserved in the deed for open

---

[3] Myers noted at the hearing before the circuit court, and the court and Sunriver accepted, that the use of "parcel" in these descriptions is a mistake. The deed is describing a single tract that includes the property that Myers now owns. The tract was approximately 10 acres in total. Each smaller "parcel" referred to in the deed was actually just an undivided part of that single tract.

space, an athletic field or park, and parking—as a licensed residential facility.

Sunriver moved for a directed verdict regarding the deed provisions, arguing that subsections 5(a) to (d) of the deed do not "restrict[] the use of the real property *** [b]y" a licensed residential facility, ORS 93.270(1)(b)(B), because they apply to all development of the property and do not single out licensed residential facilities. The court rejected that argument and went on to consider the merits of the petition, which raised the same legal issue. Sunriver again argued that subsections 5(a) to (d) do not qualify for removal from the title to the property because they do not violate ORS 93.270(1)(b)(B), and the court again concluded that they did. Accordingly, it entered a judgment removing the provisions from subsection 5(a) to (d) of the deed from the title to the property. ORS 93.272(5).

On appeal, in two assignments of error, Sunriver contends that the court misinterpreted ORS 93.270(1)(b)(B). It raises two arguments: First, the deed provisions do not "restrict[] the use of the real property *** [b]y" a licensed residential facility, ORS 93.270(1)(b)(B), because they simply delineate where on the property *any* building can go; they do not prevent a licensed residential facility from using the part of the property where any other kind of allowed development may be sited. Second, Sunriver contends that ORS 93.270(1)(b)(B) does not apply to provisions in deeds, like the 1983 deed in this case, executed and recorded before the statute took effect.

We agree with Sunriver's first argument and, accordingly, do not consider its second. We review questions of statutory interpretation for legal error, seeking to discern the intention of the legislature by considering the text and context of a statute and, to the extent that it is helpful, its legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). If a statute remains ambiguous after that analysis, we apply maxims of interpretation to resolve the ambiguity. *Id.*

As set out above, ORS 93.270 prohibits provisions "[r]estricting the use of the real property *** [b]y any [licensed residential] facility[.]" ORS 93.270(1)(b)(B). Myers's

view of the meaning of "restrict" comes from the noun "restriction" and focuses on limitations on use or enjoyment. That focus accords with one meaning of the verb "restrict": "to set bounds or limits to : hold within bounds: such as * * * to check, bound, or decrease the range, scope, or incidence of : set what is to be included or embraced by : bar or carefully govern addition or increment to." *Webster's Third New Int'l Dictionary* 1937 (2002). Viewed that way, Myers contends, the statute prohibits all provisions limiting or holding within bounds the use of the real property by any licensed residential facility; it would prohibit any provision, even one of general application, that limits in any way the scope of the use of the property by a licensed residential facility. At oral argument, Myers agreed that, for example, under that understanding of the statute, it would prohibit conservation easements to the extent that they prevent use of property for a licensed residential facility.

"Restrict" also has another meaning: "to place (land) under restrictions as to use (as by zoning ordinances)." *Id*. "As to" means "with reference to : in regard to : as regards"; synonyms include "about, concerning, respecting." *Id*. at 134. If "restricting" has that meaning, the statute prohibits provisions that place restrictions on the property about or concerning use by any licensed residential facility. That group of provisions would include provisions that expressly limit the use of the property by a licensed residential facility. Perhaps it would also include restrictions that are not explicitly aimed at licensed residential facilities but that are about, or concern use by, such facilities because they have the effect of preventing the use of property for a licensed residential facility but not for other residential uses. However, the group of provisions that impose land use restrictions about or concerning use by any licensed residential facility surely would not include provisions, like the ones at issue here, that limit use of the property for nearly all purposes and do not affect licensed residential facilities differently from other residential uses.[4]

---

[4] *Cf. Moore v. City of Eugene*, 308 Or App 318, 335-36, 482 P3d 190 (2020), *rev den*, 368 Or 168 (2021) (explaining that because, in the context of land use, "'use' is a term of legal art that refers to the actual employment of land for a categorical purpose, whether a residential, farm, or forestry purpose, not the

For several reasons, we conclude that the legislature intended the latter meaning of "restrict." First, ORS 93.270 is a statute concerning uses of land, which weighs in favor of the conclusion that the legislature intended the meaning of "restrict" that is specific to land use.

Second, the context of ORS 93.270 also indicates that the legislature did not intend the broad meaning of "restrict"—effectively, any limit on use—argued by Myers and adopted by the circuit court. As explained below, ORS 97.272 provides an extremely powerful tool for removing provisions that violate ORS 93.270 from the title to property. If Myers's interpretation of "restrict" were correct, then, taken together, ORS 93.270 and ORS 93.272 would make it impossible to successfully impose almost any restriction on the use or development of *any* property—even something as innocuous as a conservation easement—through a provision in a deed, a contract to convey property, or a declaration recorded under ORS 94.580.

As set out above, ORS 93.272(1) provides that "any owner of record of real property" that is subject to an instrument that violates ORS 93.270 may file a petition. ORS 93.272(5) provides that, at the hearing on the petition, "the sole issue" is "whether the provision * * * is in violation of ORS 93.270."

Those subsections are notable in a couple of respects. First, to obtain removal of provisions from the chain of title to the property, the owner need not allege or show that the owner intends to use the property for a licensed residential facility—no circumstance-specific evidentiary showing is necessary to support a petition. That is, if the real property is subject to an instrument conveying or contracting to convey fee title that contains a provision in violation of ORS 93.270, any owner of record is entitled to file, and prevail on, a petition; nothing more is required. Thus, if any provision that limits the use of the property for a licensed residential facility, either directly or indirectly (by prohibiting certain

details of siting and development standards," "to 'restrict' residential use within the meaning of [the provisions at issue], a land use regulation adopted after an owner acquired her property must limit the owner's preexisting legal right to use her residentially zoned private property for a residential purpose, not merely alter applicable siting and developments standards").

uses or development across the board), violates ORS 93.270, then any owner of record of any property is entitled to file, and prevail on, a petition against any provision that limits the use or development of the property in any way.

Additionally, the basic remedy is for the court to "enter a judgment removing the provision from the title to the property." ORS 93.272(5). If, as Myers argues, ORS 93.270(1)(b)(B) prohibits any provision, even one of general application, that has the effect of limiting in any way the use of the property by a licensed residential facility, then, under ORS 93.272, when any owner of record prevails on a petition against any provision that limits the use or development of the property in any way, the remedy is removal of that provision from the title to the property. That removal is not effective only as to the owner who brought the petition; the provision is removed permanently, as to all future owners, regardless of their intended uses of the property.

That is, if Myers's interpretation of the statute is correct, then, upon petition by an owner of record, a court must permanently remove from the title to any property any provision limiting development to a certain part of the property or limiting development in nearly any other way. Functionally, that interpretation of the statute would make it impossible to impose almost any binding limitation on the use or development of any piece of property through real estate instruments. If the legislature had intended to abolish private land use planning through real estate instruments, it is our view that it would have done that explicitly rather than through a provision that appears to apply much more narrowly. The breadth of ORS 93.272's enforcement procedure strongly suggests that the legislature intended the meaning of "restricting" in ORS 93.270(1)(b)(B) to be narrower than Myers contends it is.[5]

---

[5] At oral argument, Myers suggested that ORS 93.272(6) creates a work-around that would allow courts to avoid some of the drastic consequences of her interpretation of the statute. ORS 93.272(6) provides that "[i]f a court finds only part of a provision to be in violation of ORS 93.270 under this section, the court shall enter a judgment removing only that part of the provision that is in violation." In Myers's view, that subsection would allow a court to enter a judgment that removes a provision that violates ORS 93.270(1)(b)(B) only to the extent that the provision prevents the property from being used for a licensed residential facility, leaving the provision intact for all other purposes.

Finally, the narrower meaning of "restrict" comports with the legislative purpose, which was to provide equal housing opportunity for people with disabilities by placing licensed residential facilities on equal footing with other residential uses. That purpose, as well as the intended scope of the measure, is demonstrated by the testimony of Debbie Wood, staff of the State Housing Council, which proposed the bill that became ORS 93.270(1)(b)(B). Wood testified as follows to the house committee considering the bill:

"In the past several years the legislature has enacted a variety of laws to ensure that all Oregonians are given the opportunity to live in community settings. Each local jurisdiction is expected to protect the right of disabled persons to live within the community. One of the most important protections that has been established is that group homes must be treated equally with other kinds of housing within the community. These zoning requirements have helped the state in its effort to deinstitutionalize residents from our large state institutions, and is a cornerstone in Oregon's basic belief that all persons in this state have the right to live in the setting that best meets their needs.

"There is a potential 'loophole' in the state's efforts to ensure that all communities provide equal opportunity in housing for the disabled: That is the area of covenants, deeds and restrictions. HB 2061 is designed to close that 'loophole.'

"* * * * *

"It is the concern of the State Housing Council that covenants, deeds and restrictions can be used to thwart the purpose of the laws that have been enacted in this state to protect the right of disabled persons to live in the community in group homes and other housing alternatives. For

---

We disagree. "Part of a provision," ORS 93.272(6), refers to a word or a group of words. *See Webster's* at 1827 (defining "provision" as "a stipulation (*as a clause* in a statute or contract) made in advance" (emphasis added)). Thus ORS 93.272(6) allows a court to remove a word or group of words that violates ORS 93.270 and leave the rest of the words of the provision intact. Myers's proposed interpretation would require the court to limit the *effect* of a provision, not remove some of the words from the provision. To effectuate her interpretation, a court would have to add words to the provision—for example, allowing a limit on the use of property to stand "except that it shall not prohibit use of the property for a licensed residential facility," or something similar. That understanding is incompatible with the text of ORS 93.272(6) and, consequently, does not cut against our understanding of the statutory context, discussed in the text.

> example, it is perfectly legal to have a homeowners' association that would prohibit group homes, even though the underlying zoning must allow one. It is legal to have more subtle language that would also disallow group homes, such as a prohibition against unrelated adults living together."

Testimony, House Committee on Human Resources, HB 2061, Jan 25, 1989, Ex E (statement of Debbie Wood, Housing Policy Analyst, State Housing Council).

Thus, the purpose of ORS 93.270(1)(b)(B) is to prevent licensed residential facilities from being treated differently than "other kinds of housing within the community" through provisions imposed in real estate instruments and certain declarations. *Id.* We conclude that ORS 93.270 (1)(b)(B) prohibits provisions that impose land use restrictions about or concerning use by licensed residential facilities. That interpretation of "restrict" in the statute achieves the legislative purpose of preventing housing discrimination against people with disabilities, without vitiating private land-use planning, which we believe was the legislature's intent.

Here, subsections 5(a) through (d) of the deed do not expressly address use by licensed residential facilities. Nor has Myers contended or shown that those provisions impose restrictions about or concerning use by a licensed residential facility in some other way, such as by showing that they have the effect of preventing the use of the property for a licensed residential facility but not for other residential uses. Accordingly, the circuit court erred in entering a judgment removing subsections 5(a) through (d) of the deed from the title to the property. Thus, on appeal, we reverse and remand for the court to enter a judgment dismissing the petition as to the deed provisions.

## CROSS-APPEAL

Next, we consider Myers's cross-appeal. As explained above, in her petition, she also alleged that provisions in two declarations to which her property is subject, which limit the use of the property to specified nonresidential uses, violate ORS 93.270. The circuit court did not rule on the merits of that claim. Instead, the court held that it lacked subject matter jurisdiction over that part of the petition and,

accordingly, granted Sunriver's motion for judgment on the pleadings and dismissed the petition as to the provisions in the declarations. On cross-appeal, Myers assigns error to the court's determination that it lacked subject matter jurisdiction.

Because the cross-appeal presents a complex procedural situation, we explain the circuit court's reasoning and the parties' arguments, both below and on appeal, in some detail before considering the merits of the arguments on appeal. During that explanation, to provide further context, we also briefly note our conclusion on each issue; our analysis on each issue appears further below. We ultimately conclude that the circuit court did not err in dismissing the part of the petition relating to the declaration provisions for lack of subject matter jurisdiction.

Sunriver moved for judgment on the pleadings as to the part of Myers's petition based on the declaration provisions. Sunriver contended, and the circuit court reasoned, that the court lacked subject matter jurisdiction because, before 2018, ORS 93.270 and ORS 93.272 did not apply to provisions in any declarations, and a 2018 amendment, which broadened the scope of those statutes to include provisions in "declarations recorded under ORS 94.580," had not taken effect. Or Laws 2018, ch 35, § 3. As we will explain, that reasoning was incorrect; when Myers filed her petition, in 2019, the 2018 amendment had taken effect. Thus, when Myers filed the petition, the statutes applied to provisions in "declarations recorded under ORS 94.580." *Id.*

Below, Sunriver also contended, in the alternative, that the court lacked subject matter jurisdiction for another reason: because the declarations here were not "recorded under ORS 94.580," and so, even if the amendment had taken effect, the statutes still would not include provisions in the declarations at issue. In support of that argument, Sunriver pointed out that Myers had not alleged that the declarations were recorded under ORS 94.580. The court did not reach that question, because, as noted above, it concluded that it lacked subject matter jurisdiction over provisions in *any* declarations, because the statutory amendment had not taken effect. On appeal, Sunriver renews its

alternative contention that Myers failed to plead that the declarations were recorded under ORS 94.580.

For her part, Myers concedes both that she did not plead that the declarations at issue were recorded under ORS 94.580 and that, in fact, they were not recorded under ORS 94.580. However, she raises two alternative reasons that, she contends, the court nevertheless had subject matter jurisdiction over the petition as to the declaration provisions.

Myers did not timely raise those alternative arguments before the circuit court; thus, they are not preserved. ORAP 5.45 (requiring preservation). However, because the issue on cross-appeal is whether the circuit court had subject matter jurisdiction, it appears that ordinary preservation requirements may not apply. *See, e.g.*, *Multnomah County Sheriff's Office v. Edwards*, 361 Or 761, 777, 399 P3d 969 (2017) ("This court has long held that the ordinary rule requiring preservation of claims of error does not apply when the claim is that a lower court lacked 'subject-matter jurisdiction.'"); *Menten and Detherage*, 302 Or App 425, 427-28, 461 P3d 1075 (2020) ("'[J]urisdiction over the subject matter exists when the constitution or the legislature or the unwritten law has told this court to do *something* about *this kind of dispute*.'" (Quoting *School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972) (emphasis in original)).). Thus, we address those alternative arguments. As explained below, we conclude that those arguments may show that Myers *could have* petitioned the court to remove the declaration provisions from the title to her property in a way that would have given the court subject matter jurisdiction over that part of the petition. However, given the petition that she actually filed, her arguments fail.

With that procedural background in mind, we turn to the merits of the issues on cross-appeal. We begin by considering the circuit court's conclusion that the 2018 amendments to ORS 93.270 and ORS 93.272 did not apply to Myers's petition, which she filed in 2019. In 2018, in House Bill (HB) 4134, the legislature amended ORS 93.270 and ORS 93.272 to include provisions in certain declarations in (1) the group of provisions prohibited by ORS 93.270 and (2) the group of

provisions for which removal from the title to the property can be sought under ORS 93.272. HB 4134 (2018), §§ 2, 3.[6] The provisions newly covered under the amendments are provisions in declarations "recorded under ORS 94.580." *Id.*

HB 4134 had a section describing its applicability date, which, as relevant here, provided as follows: "[T]he amendments to ORS 93.272 by section 3 of this 2018 Act apply to petitions for removal of provisions in violation of *ORS 93.270(1)(a)* filed on or after the effective date of this 2018 Act." HB 4134 (2018), § 4 (emphasis added).

Myers filed the petition in this case in 2019, and the petition alleged that the provisions at issue violate ORS 93.270(1)(*b*). In support of its motion for judgment on the pleadings, Sunriver argued that the 2018 amendments to ORS 93.270 and ORS 93.272 did not apply to Myers's petition because section 4 of HB 4134—the applicability section— referred only to "provisions in violation of ORS 93.270(1)(a)," not provisions in violation of ORS 93.270(1)(b). Sunriver argued that, by providing an express applicability date in section 4 for the amendments and making that date applicable only to "provisions in violation of ORS 93.270(1)(a)," the legislature indicated an intention for the amendments never to take effect as to provisions in violation of ORS 93.270(1)(b). The court agreed.

However, the fact that that applicability section specifies that it applies to ORS 93.270(1)(a) does not mean that, contrary to the plain text of ORS 93.272, the legislature intended the amendment to ORS 93.272 never to apply

---

[6] Section 2 of HB 4134 amended ORS 93.270 as follows:

"(1)  A person conveying or contracting to convey fee title to real property**, or recording a declaration under ORS 94.580,** may not include in an instrument for that purpose a provision [listed in paragraph (1)(a) or (1)(b)]."

(Addition in boldface.) As relevant here, section 3 of the bill amended ORS 93.272 as follows:

"(1) *** [A]ny owner of record of real property that is subject to an instrument conveying or contracting to convey fee title to the property**, or a declaration recorded under ORS 94.580,** that contains a provision that is in violation of ORS 93.270 may file a petition to remove that provision from the title to the property."

(Addition in boldface.)

at all to petitions under ORS 93.270(1)(b). As amended, ORS 93.272(1) provides:

> "Except as otherwise provided in ORS 93.274, any owner of record of real property that is subject to an instrument conveying or contracting to convey fee title to the property, **or a declaration recorded under ORS 94.580,** *that contains a provision that is in violation of ORS 93.270* may file a petition to remove that provision from the title to the property."

(New text in boldface; italics added for emphasis.) That text unambiguously addresses any "provision that is in violation of ORS 93.270." That includes provisions that are in violation of any part of ORS 93.270, including provisions that violate ORS 93.270(1)(a) and provisions that violate ORS 93.270(1)(b).

Section 4 of HB 4134 specifies that, as to petitions under ORS 93.270(1)(a), the bolded amendment applies to petitions filed on or after the effective date of the act, but it does not specify when the amendment takes effect with respect to petitions under ORS 93.270(1)(b). Although a clear and comprehensive applicability clause provides helpful evidence of the legislature's intent about when new provisions or amendments will apply,[7] the absence of a complete applicability clause does not mean that the legislature intended for the amendment never to take effect.

The existence of the amendment, and its unambiguous application to any "provision that is in violation of ORS 93.270," ORS 93.272(1), indicates that the legislature intended it to apply at some point. The effective date of the act was March 16, 2018. Or Laws 2018, ch 35, § 5 (declaring an emergency and making the bill effective upon passage). Thus, after March 16, 2018, ORS 93.272(1) allowed an "owner of record of real property that is subject to an instrument conveying or contracting to convey fee title to the property, or a declaration recorded under ORS 94.580,

---

[7] *See, e.g.*, *Rider v. Carranza*, 306 Or App 616, 619, 475 P3d 467 (2020) (applicability clause is the best evidence of the legislature's intent on when the new provisions will apply); *id.* ("'A good way to avoid ambiguity about a statute's application—regardless of the verb tense used—is to include an applicability clause.'" (Quoting Office of Legislative Counsel, *Bill Drafting Manual* § 3.5 (2018).)).

that contains a provision that is in violation of ORS 93.270" to "file a petition to remove that provision from the title to the property."

Accordingly, the circuit court erred in concluding that, despite the unambiguous text of the amendment, the legislature intended for it never to take effect with regard to provisions that violate ORS 93.270(1)(b).

Next, we consider Sunriver's alternative basis for affirmance, which, as explained above, is that the court correctly dismissed the petition with respect to the declarations, even if the 2018 amendments applied to the petition, because the declarations were not "recorded under ORS 94.580." ORS 93.270(1); ORS 93.272(1). As explained above, Myers did not allege that the declarations at issue were recorded under ORS 94.580, and she concedes that they were not. Thus, Sunriver's alternative basis for affirmance is well taken.

Ordinarily, that conclusion would be the end of our analysis; we would affirm on cross-appeal on the alternative basis for affirmance raised by Sunriver. However, in this case, Myers has raised two alternative arguments that, she contends, nevertheless prevent us from affirming the circuit court's ruling. Myers argues, first, that restrictions imposed in declarations are implicitly contained in every instrument conveying title and, thus, are included in the reach of ORS 93.272 regardless of the 2018 amendment. Second, she argues that, in this case, the deed—part of the deed that was not alleged in or attached to the petition—incorporates the declarations by reference.

We pause here to set out the relevant text of ORS 93.272(1) one more time, in order to orient our discussion of those two alternative arguments. That subsection provides, as follows:

"[A]ny owner of record of real property that is subject to an instrument conveying or contracting to convey fee title to the property, or a declaration recorded under ORS 94.580, that contains a provision that is in violation of ORS 93.270 may file a petition to remove that provision from the title to the property."

Thus, a petitioner is an owner of record of real property that is subject to (1) an instrument conveying fee title to the property that contains a provision that is in violation of ORS 93.270; (2) an instrument contracting to convey fee title to the property that contains a provision that is in violation of ORS 93.270, or (3) a declaration recorded under ORS 94.580 that contains a provision that is in violation of ORS 93.270.

Myers's two alternative arguments turn on the idea that, although ORS 93.272 allows a challenge to a provision in a declaration only if the declaration is recorded under ORS 94.580, she could nevertheless challenge the provisions in the declarations here (which, as she concedes, were not recorded under ORS 94.580) because those provisions are implicitly (as a matter of law) and explicitly (as a matter of fact) incorporated into the deed. That is, she contends that the court erred in dismissing the portion of her petition alleging that the declaration provisions had to be removed from the title to her property because the court should have understood that portion of the petition to be bringing a challenge to provisions in *the deed* rather than provisions in the declarations.

Those alternative arguments seek, at this late date, to reframe the controversy that Myers presented to the circuit court in a way that is materially different from the way she described it in her petition. In the petition, Myers did not allege that all the provisions that she challenged were either implicitly or explicitly in the deed. Rather, she alleged that the declaration provisions were in the declarations, not the deed, and she sought to have each of them removed "from the applicable declaration."[8]

---

[8] The petition alleged, as follows:

"5. The specific discriminatory restrictions applicable to the Property that are in violation of [ORS] 93.270 are as follows:

"a. Section 2.2.1(a) of the Sunriver Phase II Declaration Annexing Tract C, Deer Park I to River Village ***.

"b. Section 5.2 of the Sunriver Phase II Declaration Annexing Tract C, Deer Park I to River Village ***.

"c. Section 3.06 of the Consolidated Plan of Sunriver ***.

"d. Section 5 of the Warranty Deed ***."

The prayer of the petition stated as follows: **"WHEREFORE**, Petitioner Persida Myers, respectfully prays this Court issues an order and judgment removing the

Because the declarations at issue were not "recorded under ORS 94.580," the court correctly concluded that it lacked authority under ORS 93.272(1) to remove provisions that Myers had alleged were imposed by those declarations from the title to the property. If Myers had alleged that her property was subject to a deed that contained those provisions, then perhaps, as Myers contends, the court would have had authority to act on the petition. However, that is not what she alleged, and it is now too late to change the underlying theory on which she brought the petition.

Several weeks after the circuit court ruled on the motion for judgment on the pleadings, Myers moved to amend the petition to include allegations that the deed incorporated the declaration provisions. But she withdrew that motion before the court ruled on it, and the petition was never amended. Without the amendment, the petition is insufficient to support her reframing of the basic controversy in the case. Consequently, the court did not err in granting Sunriver's motion for judgment on the pleadings. We thus affirm on cross-appeal.

## ATTORNEY FEES

Finally, in a supplemental assignment of error, SROA contends that the court erred in denying its request for attorney fees as to the part of Myers's claim on which it was a prevailing party—the claim based on the declaration provisions. It claims that entitlement based on two sources: first, ORS 94.719, and, second, a provision of one of the declarations.

As relevant here, ORS 94.719 provides, as follows:

"[I]n any suit or action brought by * * * [a homeowners] association or any owner or class of owners to enforce compliance with the terms and provisions of * * * the declaration * * *, the prevailing party shall be entitled to recover reasonable attorney fees therein and in any appeal therefrom."

Similarly, the declaration provision on which SROA relies provides, "In the event that the Administrator of Sunriver

---

discriminatory provisions identified in paragraph 5(a), 5(b), 5(c) and 5(d) of this Petition from the applicable declaration, warranty deed and supporting documentation." (Boldface in original.)

[(which is SROA)] shall bring any suit or action to enforce any provision herein contained in" certain declarations, "the defendant in such suit or action shall pay" costs and expenses, including attorney fees.

The circuit court concluded that those provisions did not apply to this action because it was brought by Myers, not SROA. SROA contends that the court erred because SROA "brought" an "action" by filing an answer to Myers's petition and requesting a hearing. We reject that argument. The circuit court did not err in denying SROA's request for attorney fees.

For the foregoing reasons, as to the appeal we reverse and remand, as to the cross-appeal, we affirm, and we affirm the supplemental judgment.

Portion of general judgment regarding deed provisions reversed and remanded; portion of general judgment regarding declaration provisions affirmed; supplemental judgment affirmed.